Eddie ESCAMILLA, Appellant,

v.

The STATE of Texas, Appellee.

No. 53660.

Court of Criminal Appeals of Texas.

May 18, 1977.

State's Motion for Rehearing Denied
Nov. 2, 1977.

Frank Steelman, Bryan, for appellant.

W. T. McDonald, Jr., Dist. Atty. and J. Bradley Smith, Asst. Dist. Atty., Bryan, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

PHILLIPS, Judge.

The offense is burglary of a vehicle; the punishment, enhanced under V.T.C.A., Penal Code, Sec. 12.42(a), 15 years.

In a per curiam opinion delivered January 12, 1977, this appeal was dismissed because the record did not show appellant's motion for new trial was overruled prior to pronouncement of sentence. A supplemental transcript reveals the motion for new trial was overruled and the sentence was therefore timely. The appeal is reinstated.

Appellant challenges, among other things, the sufficiency of the evidence and the admission of evidence concerning a blood sample taken from appellant.

The complaining witness, Bessie Tamez, testified she went to Ted's Place in Bryan about 10:00 p. m. June 26, 1975. She parked her pickup truck across the street, locking the doors, and she left her purse on the seat. About 10:30 p. m. she returned to the truck and noticed the vent window had a hole in it; her purse was missing, and there was glass on the seat. A rock, a blue polka dotted handkerchief or bandana, and a stick about 21 inches long were found in the truck. The door on the driver's side could not be unlocked because the point of a knife had been broken off in the lock.

Roy Veracruz, an employee of Ted's Place, testified he escorted Mrs. Tamez back to the pickup and then flagged down a police officer. While the officer was taking down the information, Mr. Veracruz saw appellant and a couple of his friends enter the El Conquistador Club. He told the officer the handkerchief might belong to appellant because he had noticed a blue polka dotted handkerchief sticking out of appellant's pocket about 4:30 that afternoon while appellant was in Ted's Place. Witness Veracruz testified appellant had left the bar about 4:40 and returned about 9:00 or 9:30, leaving about 9:45 or 9:50. Veracruz did not notice whether appellant had the handkerchief when he returned that evening.

Officer Fickey of the Bryan Police Department was investigating the burglary when Mr. Veracruz directed his attention to appellant. As Officer Fickey entered the club, appellant saw him and put his head down on his elbows. Officer Fickey asked appellant to step outside and talk with him and appellant asked why, and then said he wouldn't go. Officer Fickey grabbed appellant's right wrist and noticed there was blood on his hand from appellant's arm. Appellant was placed under arrest for public intoxication. Appellant was taken to the hospital for treatment of his arm, and he told Officer Fickey he was cut by a knife at another bar when some guys jumped him and tried to take his money.

An investigation of the scene revealed a trail of blood leading from the complainant's truck to a dumpster on the corner. There were four patches of blood on the handkerchief. Witness Williams, a forensic serologist with the Dallas County Criminal Investigation Laboratory, testified the blood on the handkerchief was type A, Rh positive M&N, and that this was the same type blood as appellant's. She further stated only nine percent of the population has blood of this type.

There were no fingerprints lifted from the pickup truck and the contents of the complainant's purse were not recovered. The appellant offered no evidence at the guilt stage of the trial.

Detective Miller testified that on October 3, 1975, he, appellant, appellant's attorney and the assistant district attorney went to the Brazos County Health Unit where a registered nurse took blood from appellant. This action was taken pursuant to an order of the court entered October 2, granting the State's motion to obtain a blood sample under Rule 167a, Tex.R.Civ.P.[1]

The State's motion alleged appellant was charged with burglary of a vehicle, that his blood type would be in controversy, and that it was necessary to obtain a sample of his blood to determine whether his blood was the same as that found on a handkerchief in the burglarized vehicle.

The court's order directed appellant to submit to all procedures necessary to obtain a blood sample, and Dr. Buck of the County Health Department was ordered to obtain blood by use of medically approved procedures. Sheriff Hamilton was ordered to

1. Rule 167a(a) states, "When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

cause appellant to be made available to Dr. Buck and to assist the doctor in complying with the order.

Appellant contends the evidence concerning the blood test should have been suppressed because this constituted a search of the person and the search was conducted without consent and in violation of Art. I, Sec. 9, of the Texas Constitution.

On December 9, 1975, appellant filed a motion to suppress evidence obtained from an illegal search alleging (1) the taking of his blood was in violation of the Fourth and Fifth Amendments of the U.S. Constitution and (2) taking blood is a search and there was no sworn affidavit showing probable cause as required by Art. 1.06, V.A.C.C.P. A hearing was held on the motion on January 9, 1976, and the motion to suppress was denied on January 12, the same day the case came to trial. Although the testimony of the hearing on the motion to suppress was not made a part of the record on appeal, the question has been preserved for review. *Graves v. State*, Tex.Cr.App., 513 S.W.2d 57; *Riojas v. State*, Tex.Cr.App., 530 S.W.2d 298. Cf. *Writt v. State*, Tex.Cr. App., 541 S.W.2d 424.

In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), involving a conviction for driving while intoxicated, the Supreme Court rejected the argument that withdrawal of a sample of the accused's blood and receipt of evidence of a chemical analysis of the blood violated the self incrimination clause of the Fifth Amendment. However, the Court further stated:

"But if compulsory administration of a blood test does not implicate the Fifth Amendment, it plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment . . . It could not reasonably be argued . . . that the administration of the blood test in this case was free of the constraints of the Fourth Amendment. Such testing procedures plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of that Amendment.

\* \* \* \* \* \*

. . . We begin with the assumption that once the privilege against self-incrimination has been found not to bar compelled intrusions into the body for blood to be analyzed for alcohol content, the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Schmerber* at pages 767–768, 86 S.Ct. at page 1834.

In holding the defendant's Fourth Amendment right to be free of unreasonable searches and seizures was not violated in that case, the Supreme Court found that, although the arresting officer did not have an arrest or search warrant, he did have probable cause and he might reasonably have believed the situation was an emergency and there was not time to seek out a magistrate and secure a warrant. "Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest." Id. at page 771, 86 S.Ct. at page 1836. The Court also found the test chosen to measure the blood alcohol level was a reasonable one and was performed in a reasonable manner.

■ We hold the taking of a blood sample is a search and seizure within the meaning of Art. I, Sec. 9 of the Texas Constitution, thus the State was required to comply with the provisions of Art. 1.06 and Chapter 18, V.A.C.C.P.[2]

■ The State's "motion for permission to obtain a sample of defendant's blood" does not meet the requirements of an affidavit upon which a search warrant may

---

2. See also *Ex parte Davis*, Tex.Cr.App., 542 S.W.2d 192, where we held a habeas corpus proceeding relating to denial of bail in a capital murder case is a criminal case and the trial court was not authorized to compel a psychological examination under Rule 167a, Tex.R. Civ.P.

issue. Assuming an allegation that an accused has been indicted is a sufficient showing of probable cause, the motion is not sworn to. See Art. 1.06 and Art. 18.01(b), V.A.C.C.P. Further, the court's order does not meet the requirements of a search warrant under Art. 18.01, supra. See *Poindexter v. State*, Tex.Cr.App., 545 S.W.2d 798. We note that a search warrant issued to seize blood would be an invalid warrant, as blood is not one of the items for which a search warrant may issue under Art. 18.02, V.A.C.C.P.[3]

The State contends appellant consented to the blood test, relying on the testimony of Detective Miller that shows appellant assisted the nurse in finding a vein from which to draw blood.

■ Consent to search must be shown to be positive and unequivocal and the burden is upon the State to show by clear and convincing evidence that the consent was freely and voluntarily given. *Allen v. State*, Tex.Cr.App., 487 S.W.2d 120. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. *Kolb v. State*, Tex.Cr.App., 532 S.W.2d 87; *Evans v. State*, Tex.Cr.App., 530 S.W.2d 932.

■ The record shows appellant was in custody at the time of the blood test, although he had been released on a $1500 bond. *Ex parte Trillo*, Tex.Cr.App., 540 S.W.2d 728. Detective Miller testified he did not remember whether appellant gave consent, but he did remember "there was no hassle about it." Witness Miller further testified:

"Q [DEFENSE COUNSEL] Did he have a choice as to whether or not he gave blood?

A Yes, sir, he could have resisted or argued about it. He did not.

Q You mean, if he had argued, you all would not have taken the blood, with a signed Court Order?

A Yes, sir, with a signed Court Order, we would have taken the blood.

Q Did you have a signed Court Order?

A Yes, sir.

\*    \*    \*    \*    \*    \*

Q With a Court Order, did Mr. Escamilla have a choice?

A He did not really have any choice, but he did not resist violently or offer any argument."

Under these circumstances, we find appellant did not consent to the blood test. Further, the search was not incident to arrest and was not conducted under emergency or exigent circumstances. Cf. *Perez v. State*, Tex.Cr.App., 514 S.W.2d 748.

Thus, the search of appellant's person and the seizure of the blood were not authorized by Art. I, Sec. 9 of the Texas Constitution and the results of the blood test were erroneously admitted.

■ We also find the evidence insufficient to support the conviction. Although appellant was present at Ted's Place 10 to 15 minutes before the complainant's arrival, he was not seen around or near the pickup truck. Cf. *Chenault v. State*, Tex.Cr.App., 494 S.W.2d 540; *Ewing v. State*, Tex.Cr. App., 400 S.W.2d 911. The only evidence which connects appellant with the crime is his possession five and one-half hours before the offense of a handkerchief similar to a handkerchief found in the truck after the illegal entry and the presence of blood

---

**3.** Art. 18.02 provides:

"A search warrant may be issued to search for and seize:

(1) property acquired by theft or in any other manner which makes its acquisition a penal offense;

(2) property specially designed, made, or adapted for or commonly used in the commission of an offense;

(3) arms and munitions kept or prepared for the purpose of insurrection or riot;

(4) weapons prohibited by the Penal Code;

"(5) gambling devices or equipment, altered gambling equipment, or gambling paraphernalia;

(6) obscene materials kept or prepared for commercial distribution or exhibition, subject to the additional rules set forth by law;

(7) drugs kept, prepared, or manufactured in violation of the laws of this state;

(8) any property the possession of which is prohibited by law;

(9) implements or instruments used in the commission of a crime."

on the handkerchief and on appellant's arm shortly after the offense.

For the foregoing reasons, the judgment is reversed and the cause remanded.

DOUGLAS, J., dissents.

DOUGLAS, Judge, dissenting on State's motion for rehearing.

The majority overrules the State's Motion For Rehearing without written opinion. It holds that the extraction of a sample of appellant's blood pursuant to an order of the district court was in violation of Article 1, Section 9 of the Texas Constitution, and that there was at the time it was taken no statutory authority for the taking of the sample. In so doing, the majority holds that a district court order under a rule approved by the Legislature was unreasonable and that the taking of a sample of blood from appellant was unreasonable.

The majority reasons that the extraction of blood is a search and seizure within the meaning of Article 1, Section 9, and that as such, it cannot be performed in the absence of a search warrant issued in compliance with the provisions of Articles 1.06 and 18.02, V.A.C.C.P. In one breath, the Court asserts that the State *must* have complied with Article 18.02, supra, and in the next it observes that such compliance is impossible in that blood is not an item for which a search warrant may issue.

Article 1, Section 9 of the Texas Constitution states that "[t]he people shall be secure in their persons, houses, papers and possessions, from all *unreasonable* seizures or searches . . . ." (Emphasis supplied) This section has never been held to constitute a guarantee against *all* searches and seizures, *Vargas v. State*, 542 S.W.2d 151 (Tex.Cr.App.1976), but only against those in which the citizen's expectation of privacy is unreasonably intruded upon. The majority opinion engages in the assumption that because the extraction of blood is a search and seizure, a warrant is necessarily to be obtained. Such is not the case. The Interpretive Commentary to Article 1, Section 9 points out: "The fact that Section 9 lays down certain requirements for issuing search warrants does not, however, mean that a warrant is indispensable to the existence of a valid search and seizure. Searches and seizures prohibited without a warrant are those which are unreasonable."

Appellant was charged with burglary of a vehicle. Some months after the crime was committed, the State filed a motion under Rule 167a, Texas Rules of Civil Procedure, alleging that it was necessary to secure a sample of his blood to determine whether his blood type was identical to that discovered on a handkerchief in the burglarized vehicle. Rule 167a provides that when the mental or physical condition, including the blood group, of a party is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician upon a showing of good cause and notice to the person to be examined.

The evidence establishing probable cause to grant the order for the blood test will be summarized. On the afternoon of June 26, 1975, prior to the commission of the offense, appellant was seen carrying a blue polka dotted handkerchief in his pocket. At the time of his arrest later that evening he no longer had the bandana in his possession and Officer Fickey observed blood on the appellant's right wrist. On the floorboard of the burglarized vehicle, whose vent window had been broken, a blue polka dotted bandana like the one appellant had been carrying earlier was found. The handkerchief was blood stained. Appellant was taken to a Bryan hospital for treatment where the examining physician determined that the cut on his arm was fresh. Ample justification existed for determining whether appellant's blood type matched that of the blood on the handkerchief in the burglarized truck.

Appellant was taken to the Brazos County Health Unit by Detective Ronnie Miller pursuant to the order of the district court. He was at all times accompanied by his attorney. At the Health Unit, a blood sample was drawn from the appellant by a registered nurse in accordance with accept-

able medical procedures. Appellant was not handcuffed or restrained to facilitate the taking of the blood sample, and at no time was he brutalized or physically harmed in any way.

The taking of appellant's blood sample in this case bears no resemblance to the forcible tactics condemned in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), in which police choked the accused and pumped his stomach against his will in an attempt to recover morphine capsules which he had swallowed. By contrast, in the present case, every effort was made to afford appellant due process of law, and he was not subjected to force of any kind.

In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court of the United States established that the extraction of blood constitutes a search and seizure within the meaning of the Fourth Amendment. The language of that amendment must be the starting point for analysis. It provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against *unreasonable searches and seizures*, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis Supplied)

In the relatively narrow area of the law of body intrusions, there are three precedents. *Rochin v. California*, supra; *Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), and *Schmerber v. California*, supra. These cases reveal that forcible removals of evidence from the body by stomach pumping are unconstitutional, while extractions of blood samples, though not assented to, may not be.

*Schmerber* is the leading case. There, defendant was convicted for driving while intoxicated. The Court found that the warrantless, nonconsensual withdrawal of his blood was not an unreasonable search because the arresting officer had probable cause and because that officer reasonably believed there was no time to secure a warrant.

The Court wrote:

"We thus conclude that the present record shows no violation of petitioner's right under the Fourth and Fourteenth Amendments to be free of unreasonable searches and seizures. It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." 86 S.Ct. at 1836.

There was no court order in *Schmerber*.

In *Olson v. State*, 484 S.W.2d 756 (Tex.Cr. App.1972), this Court held that compelling a handwriting exemplar or sample does not constitute compelling an accused to "give evidence against himself" in violation of the Texas Constitutional self-incrimination privilege. The Court further held that compelling a blood test, if taken under conditions which comport with due process, does not violate the privilege against self-incrimination. In relying on *Schmerber's* discussion of the Fifth Amendment's relation to blood extractions, the Court reasoned that such tests are non-testimonial in nature and, thus, that the self-incrimination privilege is not implicated under such circumstances. The Fourth Amendment issue was not confronted in *Olson*.

The Court in *Olson* did observe that many types of physical evidence are compellable from an accused consistent with the Fifth Amendment. A partial list of those types of evidence follows: fingerprints, examination of the tongue, fingernail scrapings, footprints, requiring an accused to stand at a line up, requiring an accused to raise his hand before the jury, paraffin test, and requiring an accused to put on clothes and speak before the jury.

Those types of physical evidence generally are not subject to challenge on Fourth

Amendment grounds for many of the same reasons that the Fifth Amendment is inapplicable: they involve physical attributes normally displayed to the public. No search or seizure is involved.

The trial court has some inherent authority to compel the physical production of evidence. The authority of the trial court to compel an accused to submit to fingerprinting, for example, seems to be implicitly recognized because no valid Fourth or Fifth Amendment claim may be raised. See, e. g. *Price v. State*, 449 S.W.2d 73 (Tex.Cr.App. 1969).

*United States v. Crowder*, 177 U.S.App. D.C. 165, 543 F.2d 312 (1976), is the leading case which sanctions the surgical recovery of a bullet. Crowder was convicted of murder. A bullet which was surgically removed from his arm proved to be damaging evidence against him. The District of Columbia Circuit Court of Appeals held that Crowder's Fourth Amendment rights were not violated when the trial court ordered the removal of the bullet. The main focus of the majority opinion concerned the government's compliance with due process.

In addressing the Fourth Amendment claim, the majority observed that Crowder had been given a full adversary hearing. The trial judge determined that probable cause was established and ordered Crowder to submit to surgery. The order was "carefully drawn and hedged so as to protect Crowder's health and life. . . ." The Court concluded that the order was reasonable under the circumstances and affirmed.

Rule 167a has been approved by the Legislature. A district judge followed that rule in ordering that a sample of appellant's blood be extracted. The Legislature has subsequently authorized search warrants to be issued for evidence.[1] This follows the rule that already authorizes the taking of a blood sample.

The Court has held in *Hernandez v. State*, 548 S.W.2d 904 (Tex.Cr.App.1977), that it was not unreasonable for an officer to hold a suspect by the arms while another choked him until he spat up four balloons of heroin.

The Court should hold that it was not unreasonable for a registered nurse to take blood under a court order pursuant to a rule approved by the Legislature.

---

1. Article 18.02, V.A.C.C.P., as amended was enacted in Chapter 237, Section 2, at page 640 in 1977 effective May 25, 1977. It now provides for the issuance of search warrants for evidence.