Eddie ESCAMILLA, Appellant,

v.

The STATE of Texas, Appellee.

No. 53660.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 15, 1978.

Frank Steelman, Bryan, for appellant.

W. T. McDonald, Jr., Dist. Atty., J. Bradley Smith and W. W. Torrey, Asst. Dist. Attys., Bryan, for the State.

## DISSENTING OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge, dissenting.

The majority reissues the mandate without written opinion.

On original submission a majority reversed the conviction on the grounds that the Code of Criminal Procedure did not authorize the issuance of a search warrant for blood and that the evidence was insufficient to support the verdict. Thereafter, the State's motion for rehearing was overruled by the majority without written opinion. The case is found in Tex.Cr.App., 556 S.W.2d 796. In order to reconsider the question, we withdrew the mandate pursuant to our authority to take such action during the same term at which the original opinion was rendered. See *Deramee v. State*, 379 S.W.2d 908 (Tex.Cr.App.1964). We should affirm the conviction.

The facts relating to the issuance of the order to submit to a blood test will be summarized. On the evening of June 26, 1975, a truck owned by Bessie Tamez was burglarized. She discovered that the vent window of the truck had been broken and that a rock, a stick and a blue polka-dotted handkerchief were inside the vehicle. The handkerchief was bloodstained.

Appellant had been seen several hours earlier, prior to the commission of the offense, carrying a handkerchief identical to the one found in the truck. When he was arrested that evening shortly after the offense had been discovered, he no longer had the handkerchief in his possession and had blood on his right wrist. He was taken to a Bryan hospital for treatment of a laceration on his arm.

Appellant was charged with burglary of a vehicle. Several months after the crime was committed, the State filed a motion under Rule 167a, Texas Rules of Civil Procedure, seeking to obtain a sample of appellant's blood to enable the State to determine whether his blood type was identical to that of the blood discovered on the handkerchief in the burglarized vehicle. Rule 167a provides that when the mental or physical condition, including the blood group, of a party is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician upon a showing of good cause and notice to the person to be examined. The district court granted the motion.

Appellant was subsequently taken to the Brazos County Health Unit by a detective pursuant to the order of the court. He was accompanied by his attorney. At the health unit a sample of appellant's blood was secured by a registered nurse in accordance with standard medical procedures.

In the opinion on original submission, the majority determined that the extraction of blood is a search and seizure within the meaning of Article 1, Section 9 of the Texas Constitution. The Court held that a blood sample cannot be taken in the absence of a search warrant issued in compliance with Articles 1.06 and 18.02, V.A.C.C.P. The Court then reasoned that the district court's order in this case was illegal because Article 18.02 did not authorize the issuance of a warrant for blood.[1] There is no provision in

1. Texas Laws 1977, ch. 237, section 2, at 640, effective August 29, 1977, amended Article 18.02, V.A.C.C.P. This article now provides for the issuance of search warrants for mere evidence.

the Constitution that a search must be authorized in the Code of Criminal Procedure.

The proper disposition of this issue is governed by Article 38.02, V.A.C.C.P., which provides:

"The rules of evidence prescribed in the statute law of this State in civil suits shall, so far as applicable, govern also in criminal actions when not in conflict with the provisions of this Code or of the Penal Code."

Rule 167a was authorized, and has been approved, by the Legislature. It conflicts with no provision of the Constitution, Code of Criminal Procedure or of the Penal Code and was applicable here. There is no provision in the Constitution that a search must be authorized by the Code of Criminal Procedure. Since ample justification existed for determining whether appellant's blood type matched that of the blood found on the handkerchief in the burglarized vehicle, we should hold that the district court properly ordered that appellant submit to the blood extraction.

On original submission, the majority found the evidence insufficient on the premise that the evidence of appellant's blood type should have been suppressed. We should no longer view the record under that constraint.

The record reflects that the burglary occurred between 10:00 p. m. and 10:30 p. m. while the complaining witness, Bessie Tamez, was in Ted's Place. Appellant had left that establishment only minutes before Tamez arrived. And only hours before he was in possession of a blue polka-dotted handkerchief which was identical to the blood-stained one found in the burglarized truck.

A forensic serologist testified at trial that the blood on the handkerchief was type A, Rh positive M & N, and that appellant had the same type blood. She further testified that only nine percent of the population had blood of this type.

Roy Veracruz testified that he was a parttime worker at Ted's and appellant was in the bar drinking on the day in question; that appellant had a blue polka-dotted handkerchief sticking out of his right pocket; that appellant left around 4:40 or 5:00 o'clock in the afternoon and came back around 9:30 and that Bessie Tamez had come into the bar some 10 or 15 minutes after he had left.

She stayed there around 35 to 45 minutes and Veracruz walked her to her truck around 10:30 or 10:40 p. m. She could not unlock the door on the driver's side. Veracruz saw glass on the seat. He saw a blue handkerchief on the floorboard of the truck and reported it to a patrolman who was coming by. While they were talking, appellant and two of his friends walked into the El Conquistador Tavern and Veracruz said to the officer, "That's the guy I think this handkerchief belongs to."

Veracruz testified that he later saw the same handkerchief that appellant had in his pocket in the truck. At the time he saw appellant in the bar there were no cuts on his face, no cuts or bruises, nothing wrong with his arms. While they were at the truck, Veracruz handed the handkerchief, which looked like the one appellant had in his pocket, to the officers.

Bessie Tamez testified that the side door of the truck had been broken into and that there was a part of a knife broken off in the lock. Her purse, which contained two rings, credit cards, a $259 check and two dollars in change, was taken.

Officer Jerry Fickey testified that Roy Veracruz reported the truck had been broken into and handed him a handkerchief. Veracruz initialed it. It had small splotches of blood on it. He also testified that Veracruz pointed out appellant to him.

Officer Fickey noticed the trail of blood leading back toward the U–Tot–Em Store which was near the El Conquistador Club. Veracruz told Fickey where he had seen appellant going. When Fickey opened the door he noticed appellant. Appellant noticed Fickey and put his head down on his arms. He asked appellant to go with him and he took him by the arm and got blood

on him from the right wrist of appellant's arm. Appellant was drinking, had glassy eyes. They arrested him for intoxication.

Appellant offered no evidence at the guilt stage of the trial, but argues on appeal that the evidence offered by the State was not sufficient to prove his guilt "to the weight of a moral certainty." Under V.T. C.A., Penal Code, Section 2.01, the State had the burden of proving appellant's guilt beyond a reasonable doubt, not to a "moral certainty." The evidence in the light most favorable to the State was sufficient to support the jury's verdict and the court committed no error in overruling the motion for directed verdict.

No reversible error is shown. The judgment should be affirmed.