Reversed and Remanded Opinion filed July 28, 2009








Reversed and Remanded Opinion filed July 28, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00905-CR

_______________

 

THE STATE OF TEXAS, Appellant

 

V.

 

BRIAN K. DUGAS, Appellee

                                                                                                                                               


On Appeal from the County Criminal
Court at Law No. 15

Harris County, Texas

Trial Court Cause No. 1514120 

                                                                                                                                               


 

  O P I N I O N

Appellee
Brian Dugas was charged by information with the misdemeanor offense of driving
while intoxicated.  He filed a motion to suppress the results of his blood
alcohol test  on the ground that the search warrant affidavit failed to
establish probable cause.  Following a hearing, the trial court granted
appellee=s motion.  On interlocutory appeal,
the State challenges the trial court=s grant of the motion to suppress. 
We reverse and remand for further proceedings.








                              I.  Factual and Procedural Background

On March
15, 2008, Officer A.W. Barr with the Houston Police Department arrested
appellee for driving while intoxicated.  After being transported to the police
station, appellee refused to consent to a breath or blood test.  Officer Barr
prepared a blood search warrant affidavit and presented it to a magistrate
judge.  The affidavit set forth the following facts:

$                  
On March 15, 2008, Officer Barr
observed a driver fail to maintain a single lane of traffic and fail to signal
a lane change.  

$                  
Based upon his observations,
Officer Barr initiated a traffic stop.

$                  
The driver was slow to respond but
eventually stopped approximately five blocks later.

$                  
After identifying the driver as
appellee, Officer Barr detected a moderate odor of alcohol emanating from him
and noticed that he slurred his speech and was unsteady on his feet after
exiting his vehicle.

$                  
When Officer Barr asked appellee
if he had consumed any alcoholic beverages, appellee replied that he had
consumed four beers.

$                  
Officer Barr administered three
field sobriety tests: the horizontal gaze nystagmus (HGN) test, the
walk-and-turn test, and the one-leg stand test.  

$                  
During the HGN test, Officer Barr
observed six of the six observable clues.  Based on his training and
experience, Officer Barr knew that four or more clues are a reliable indicator
of intoxication.

$                  
During the walk-and-turn test, he
observed five of the eight observable clues.  Based on his training and
experience, Officer Barr knew that four or more clues are a reliable indicator
of intoxication.

$                  
During the one-leg stand test, he
observed three of the four observable clues.  Based on his training and
experience, Officer Barr knew that four or more clues are a reliable indicator
of intoxication.

$                  
Officer Barr arrested appellee for
driving while intoxicated and transported him to the police station.

$                  
When he was asked to submit a
specimen for testing, appellee became dazed and confused, took an unusually
long time to decide, and then refused both the breath and blood tests.  Based
on his training and experience, Officer Barr knew that appellee=s refusal was a violation of the implied consent
law.     








On March 15, 2008, at
6:03 a.m., the magistrate signed the search warrant.  Appellee=s blood was subsequently drawn and
tested.  

Appellee
filed a motion to suppress the result of the blood test contending that the
affidavit failed to state probable cause on several grounds.  At the hearing on
the motion, he specifically argued that because the affidavit failed to include
the time the alleged offense occurred, there was no basis upon which the
magistrate could have determined whether appellee=s blood contained evidence of a
crime.  Thus, he reasoned, the facts in the affidavit were stale and did not establish
probable cause to support issuance of the warrant.  At the conclusion of the
hearing, the trial court stated as follows:

The Court
finds that the time in the drawing of blood is a critical issue.  Because when
you=re dealing with blood, you=re dealing with absorption, elimination, and it
becomes less accurate.  And the Court finds that the Motion to Suppress will be
granted because there is no time.  Without even moving on to other issues in
the warrant, that there is no time stated in the affidavit; and, therefore, the
Motion to Suppress the Blood is granted.

On
September 8, 2008, the trial court signed the written order granting appellee=s motion to suppress the blood test. 
The State timely filed this appeal.

                                                                 II. 
Analysis

A.        Standard of Review








We apply
a bifurcated standard of review to a trial court=s ruling on a motion to suppress
evidence.  Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  We give almost total
deference to the trial court=s determination of historical facts that depend on
credibility and review de novo the trial court=s application of the law to those
facts.  Maxwell, 73 S.W.3d at 281; Carmouche, 10 S.W.3d at 327. 
We also review do novo the trial court=s application of the law of search
and seizure.  State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). 
But appellate review of an affidavit in support of a search warrant is not de
novo; rather, great deference is given to the magistrate=s determination of probable cause.  Illinois
v. Gates, 462 U.S. 213, 236B37 (1983). 

B.        Applicable Law  

Generally,
taking a blood sample is a search and seizure within the meaning of the Fourth
Amendment to the United States Constitution.  Schmerber v. California,
384 U.S. 757, 767 (1966).  Therefore, Article 1, Section 9 of the Texas
Constitution requires that a search warrant be used.  Escamilla v. State,
556 S.W.2d 796, 799 (Tex. Crim. App. 1977).  Pursuant to Texas Code of Criminal
Procedure article 18.02(10), a search warrant may be issued to search for and
seize, inter alia, Aproperty or items . . . constituting evidence of an offense
or constituting evidence tending to show that a particular person committed an
offense.@  Tex.
Code Crim. Proc. Ann. art. 18.02(10) (Vernon 2005).  Blood is an Aitem@ of evidence within the meaning of
article 18.02(10).  Muniz v. State, 264 S.W.3d 392, 396 (Tex. App.CHouston [1st Dist.] 2008, no pet.).








The
issuance of a search warrant for Aitems@ in article 18.02(10) requires that
the peace officer first present to a magistrate a sworn affidavit setting forth
sufficient facts to establish probable cause that (1) a specific offense has
been committed; (2) the specifically described property or items to be searched
for or seized constitute evidence of that offense or evidence that a particular
person committed that offense; and (3) the property or items constituting such
evidence are located at or on the particular person, place, or thing to be
searched.  Tex. Code Crim. Proc. Ann. art.
18.01(c) (Vernon Supp. 2007).  The test for determining probable cause is
whether the magistrate had a substantial basis for concluding that a search
would uncover evidence of wrongdoing.  Id. at 236.  Probable cause to
support the issuance of a search warrant exists where the facts submitted to
the magistrate are sufficient to justify a conclusion that the object of the
search is probably on the premises to be searched at the time the warrant is
issued.  Cassias v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); see
also Rodriguez v. State, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007) (AProbable cause exists when, under the
totality of the circumstances, there is a >fair probability= that contraband or evidence of a
crime will be found at the specified location.@).  Neither federal nor Texas law
defines precisely what degree of probability suffices to establish probable
cause.  Rodriguez, 232 S.W.3d at 61.  We must consider whether there are
sufficient facts, coupled with inferences from those facts, to establish a Afair probability@ that evidence of a particular crime
will likely be found at a given location.  Id.  The issue is not whether
there are other facts that could have, or even should have, been included in
the affidavit; instead we focus on the combined logical force of facts that are
in the affidavit.  Id.

When
reviewing an issuing magistrate=s determination, we should interpret the affidavit in a
commonsensical and realistic manner, recognizing that the magistrate may draw
reasonable inferences.  Id.  Whether the facts mentioned in the
affidavit are adequate to establish probable cause depends on the totality of
the circumstances.  Ramos v. State, 934 S.W.2d 358, 362B63 (Tex. Crim. App. 1996).  To
justify a magistrate=s finding that an affidavit is sufficient to establish
probable cause to issue a search warrant, the facts set out in the affidavit
must not have become Astale@ when the magistrate issues the search warrant.  McKissick
v. State, 209 S.W.3d 205, 214 (Tex. App.CHouston [1st Dist.] 2006, pet. ref=d); Serrano v. State, 123
S.W.3d 53, 60 (Tex. App.CAustin 2003, pet. ref=d); Guerra v. State, 860
S.W.2d 609, 611 (Tex. App.CCorpus Christi 1993, pet. ref=d).  Probable cause ceases to exist
when, at the time the search warrant is issued, it would be unreasonable to
presume the items remain at the suspected place.  McKissick, 209 S.W.3d
at 214.  The proper method to determine whether the facts supporting a search
warrant have become stale is to examine, in light of the type of criminal
activity involved, the time elapsing between the occurrence of the events set
out in the affidavit and the time the search warrant was issued.  Id.  With
these general principles in mind, we turn now to the affidavit in this case.








C.        The Affidavit

In its
sole issue, the State contends that the trial court erred in granting appellee=s motion to suppress because the
search warrant affidavit showed that appellee=s blood probably contained evidence
of intoxicants at the time the warrant was issued.  Appellee argues that the
trial court properly granted his motion because the affidavit did not indicate
the time of the alleged offense and, thus, the facts in the affidavit had
become stale.

We are
not aware of any cases, and neither party has directed us to any, addressing
the staleness issue related to blood-alcohol content in the context of probable
cause to support a search warrant.[1]  Appellee
instead directs us to several cases addressing the impact of the passage of
time on the admissibility of the results of a blood alcohol test.[2] 
See State v. Mechler, 153 S.W.3d 435, 437 (Tex. Crim. App. 2005);
Mata v. State, 46 S.W.3d 902, 907 (Tex. Crim. App. 2001).  But these cases
concern the admissibility of expert testimony and intoxilyzer test resultsCnot probable cause to issue a search
warrant to collect blood evidence.  As these cases are unavailing, we conclude
that we must consider whether it was unreasonable for the magistrate to presume
that evidence of intoxication would be found in appellee=s blood at the time this warrant was
issued.  See McKissick, 209 S.W.3d at 214.








First,
although the affidavit does not reflect the time that the stop occurred, it is
undisputed that the alleged offense and the issuance of the warrant occurred
the same day; indeed, the maximum amount of time between the traffic stop and
the issuance of the warrant was six hours and three minutes because the
magistrate signed the warrant at 6:03 a.m. on the same date of appellee=s arrest.  See Rodriguez, 232
S.W.3d at 61 (directing interpretation of affidavit in support of search
warrant to be performed in a commonsense manner and recognizing magistrate may
draw reasonable inferences from facts of affidavit).  Further, the affidavit
reflects the following facts: (1) Officer Barr observed appellee failing to
maintain a single lane of traffic and failing to indicate a lane change; (2)
Officer Barr detected a moderate odor of alcohol and noticed that appellee
slurred his speech and was unsteady on his feet after exiting his vehicle; (3)
appellee told Officer Barr that he had consumed four beers; (4) Officer Barr
observed sufficient clues that were reliable indicators of intoxication during
two of the three field sobriety tests administered to appellee; and (4) when
appellee was asked to submit a specimen for testing at the police station,
appellee became dazed and confused, took an unusually long time to decide, and
then refused breath and blood tests.  

Deferring
to the magistrate=s determination of probable cause[3]
and considering that a maximum of six hours had elapsed since appellee was
stopped by Officer Barr,  we cannot say it was unreasonable for the magistrate
to presume that there still would be some evidence of intoxication found in
appellee=s blood when the warrant was signed. 
We therefore conclude that the trial court erred in granting appellee=s motion to suppress.  We sustain the
State=s issue.








                                                            III. 
Conclusion 

Having
sustained the State=s sole issue, we reverse the trial court=s order on the motion to suppress and
remand for further proceedings consistent with this opinion.

 

 

 

/s/        Eva M. Guzman

Justice

 

 

Panel consists of Justices Anderson,
Guzman, and Boyce.

 

 









[1]  In Muniz v. State, the appellant argued that
the trial court erred in overruling his motion to suppress the result of his
blood alcohol test because the blood sample was drawn without a proper search
warrant.  264 S.W.3d 392, 394 (Tex. App.CHouston
[1st Dist.] 2008, no pet.).  In a sub-issue, he asserted that the information
contained in the affidavit was stale because the magistrate could not determine
from the affidavit when the alleged offense took place.  Id. at 398. 
Because appellant failed to properly brief the point for review, however, the
First Court of Appeals did not address his argument.  Id. at 399. 





[2]  We note that at least one other state has concluded
that the passage of time between the alleged offense and the blood alcohol test
result goes to the weight, rather than the admissibility, of such evidence.  People
v. Wager, 460 Mich. 118, 126, 594 N.W.2d 487, 491 (1999).  Additionally,
other states have drafted their driving while intoxicated statutes to expressly
provide that a certain blood alcohol level determined within a specific amount
of time since driving constitutes a criminal offense.  See State v. Mechler,
153 S.W.3d 435, 446 n.19B20 (Tex. Crim. App. 2005) (Cochran, J., concurring)
(citing Alaska statute making it a crime to operate a motor vehicle when a
person has a blood alcohol content of 0.08% determined by a chemical test taken
within four hours after the operation of the vehicle and Arizona law
criminalizing blood alcohol content of more than 0.08% within two hours of
driving).  





[3]  See Gates, 462 U.S. at 236B37.