[Civ. No. 40313. First Dist., Div. One. Sept. 6, 1978.]

DORIS DODD, Plaintiff and Appellant, v.
DEARLD J. HENKEL, Defendant and Respondent.

## Counsel

Von Till & Grimmer and Stephen F. Von Till for Plaintiff and Appellant.

Shepard, Olson, Turner, Dietrich, Milnes & Glasrud and Patrick A. Turner for Defendant and Respondent.

\

## Opinion

**RACANELLI, P. J.**—In an action to establish paternity and for child support, the jury returned a special verdict of nonpaternity. On appeal from the judgment entered in favor of respondent, appellant claims prejudicial error based upon (1) exclusion of testimony concerning inconclusive blood test results and (2) misconduct of counsel. We conclude that these claims are without merit; we affirm the judgment.

### Statement of Facts

The facts disclosed by the limited record on appeal are undisputed:[1] At some point during trial appellant made an *in camera* offer of proof that

---

[1]In the amended notice to prepare transcripts, appellant designated only that portion of the reporter's transcript related to the offer of proof and ruling on the admissibility of blood tests and a selected portion of opposing counsel's closing argument. (See Cal. Rules

the medical expert appointed by the court (upon appellant's motion) to conduct the serologic examinations would testify that as a result of his findings respondent was "among the 14½ to 15 percent of the population that could be the father" of the minor child born out of wedlock. In sustaining respondent's objection to the proffered testimony, the trial court concluded that such evidence merely reflecting that respondent was *included* within the blood groupings consistent with paternity was of no probative value and, in any event, subject to discretionary exclusion due to the likelihood it would unduly influence or prejudice the jury.

The dominant issue presented on appeal is whether blood-test evidence which fails to exclude the alleged father is nevertheless admissible to prove paternity.

## I.  *Inconclusive Blood-test Results as Evidence of Paternity*

The use of properly conducted blood-grouping tests as a reliable scientific method to establish *nonpaternity* of the putative father has been widely accepted in both the scientific and legal communities. (*Jackson* v. *Jackson* (1967) 67 Cal.2d 245 [60 Cal.Rptr. 649, 430 P.2d 289]; *Huntingdon* v. *Crowley* (1966) 64 Cal.2d 647 [51 Cal.Rptr. 254, 414 P.2d 382]; Witkin, Cal. Evidence (2d ed. 1966) § 657, p. 618; 10 Am.Jur.2d, Bastards, § 32, p. 867; 1 Schatkin, Disputed Paternity Proceedings (rev. 4th ed.) § 9.13.) In enacting its version of the Uniform Act on Blood Tests to Determine Paternity (Evid. Code, § 890 et seq.),[2] the California Legislature has expressly adopted the prevailing view as a substantive rule of evidence. Section 895 provides as follows:

"If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall

---

of Court, rule 4(b).) A similar partial designation of the clerk's transcript was made limited to the complaint and answer, motion and order to submit to blood tests, judgment on special verdict and notice of entry thereof, and the notice of appeal. We agree with respondent's assertion that, without a stipulation or an agreed or settled statement, such limited record constitutes the only record on appeal which may be appropriately referenced; accordingly, we disregard the statement of any matters contained in appellant's brief which are not supported by that record. (See Cal. Rules of Court, rule 15(a).) Moreover, we decline the invitation extended in appellant's reply brief to augment the record to include "the proceedings below," an option available to and obviously rejected by appellant.

[2]Unless otherwise indicated, all statutory references are to the Evidence Code.

be submitted upon all the evidence."[3]  ■  With the singular statutory exception discussed in *Kusior v. Silver* (1960) 54 Cal.2d 603 [7 Cal.Rptr. 129, 354 P.2d 657] [conclusive presumption of legitimacy (§ 621, formerly Code Civ. Proc., § 1962, subd. (5)) applies as to cohabiting husband and wife], scientifically reliable blood-grouping tests are admissible when used to exclude possible paternity. (*Jackson v. Jackson, supra,* 67 Cal.2d 245, 248.)

The forensic value of the results of medically approved blood tests to conclusively establish nonpaternity derives from the scientific application of immutable laws of inheritance: unless the child and reputed father share a compatible blood group or type, the existence of a paternal relationship is virtually impossible.[4] (See 1 Schatkin, *supra,* chs. 5-7 and authorities collected.) But the converse principle sanctioning the affirmative use of inconclusive blood-test evidence to prove paternity, as proposed in the original uniform act itself,[5] is without precedent and generally rejected on the grounds of (1) the highly prejudicial nature of such evidence (Witkin, Cal. Evidence (2d ed. 1966) § 660, p. 620; Richardson, Modern Scientific Evidence (2d ed. 1974) § 12.11, p. 367; see 39 Cal.L.Rev. 277; 11 So.Cal.L.Rev. 524, 525); or (2) its irrelevance in manifesting no more than a mere possibility of paternity through inclusion within a general blood-type classification. (See *Hodge v. Gould* (1969) 274 Cal.App.2d 806, 808 [79 Cal.Rptr. 245]; Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1972) § 20.6, p. 244; 10 Am.Jur.2d, Bastards, §§ 32, 118, pp. 868, 929; 5 UCLA L.Rev. 629, 633; see also

---

[3]Section 895, enacted under Statutes of 1965, chapter 299, section 2, page 1321, superseded section 1980.6 of the Code of Civil Procedure, its identical counterpart originally enacted under Statutes of 1953, chapter 1426, section 1, page 3014.

[4]For purposes of discussion, the terms blood-group or blood-type are used interchangeably to include the generally acceptable standard classifications commonly referred to as ABO, MN and Rh-Hr. (See *Huntingdon v. Crowley, supra,* 64 Cal.2d 647, 653-656.)

[5]Section 4 of the Uniform Act on Blood Tests to Determine Paternity (9 U.Laws Ann. (1957) p. 111) provides as follows: "If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence. *If the experts conclude that the blood tests show the possibility of the alleged father's paternity, admission of this evidence is within the discretion of the court, depending upon the infrequency of the blood type.*" (Italics added.)
California's counterpart enactment (§ 895) specifically omitted the emphasized language contained in the last sentence. At least three other states have likewise rejected the last sentence in adopting the substance of section 4. (See Ill.Ann.Stat. (1978 supp.) ch. 106¾, § 1; McKinney, N.Y. Judiciary—Family Court Act (1975) § 532; Okla.Stat.Ann. (1977 supp.) tit. 10, § 504.)

*People* v. *Nichols* (1954) 341 Mich. 311 [67 N.W.2d 230]; *State* v. *Morris* (1951) 156 Ohio St. 333 [102 N.E.2d 450].)

■ Appellant's argument favoring the affirmative use of such evidence to establish paternity is ingenuously constructed upon the premise that, absent restrictions imposed by statute or policy considerations, evidence which includes the putative father within a range of statistical probability of paternity should be permitted as relevant evidence (§ 351) tending to prove that disputed fact (§ 210). In support of such argument appellant points to criminal case law approving the affirmative use of blood-test evidence to prove identity (*People* v. *Kemp* (1961) 55 Cal.2d 458 [11 Cal.Rptr. 361, 359 P.2d 913] [use of blood specimen in analysis of seminal fluid to establish nonexclusion of suspected rapist-murderer]; *People* v. *Mummert* (1943) 57 Cal.App.2d 849 [135 P.2d 665] [evidence of victim's blood stains on defendant's clothing to corroborate rape complaint] [disapproved on other grounds in *People* v. *Collins,* 54 Cal.2d 57, 60 (4 Cal.Rptr. 158, 351 P.2d 326)]), contending that similar probative reasons exist in a civil paternity action involving the "identity" of the biological father justifying admission, at least insofar as it tends to corroborate other evidence of paternity. While appellant's thesis finds some support in the relevant literature (see McCormick, Evidence (Cont.Ed.Bar 1972) § 211, pp. 522-523; Comment (1969) 3 U.S.F. L.Rev. 299), a closer inspection reveals inherent flaws requiring its rejection, particularly in relation to the limited facts presented herein.

Initially, it is significant that the California statutes authorizing a determination of nonpaternity based upon undisputed findings of the "experts" were enacted in the wake of considerable criticism of the holding announced in *Arais* v. *Kalensnikoff* (1937) 10 Cal.2d 428 [74 P.2d 1043, 115 A.L.R. 163] and thereafter followed in the celebrated case of *Berry* v. *Chaplin* (1946) 74 Cal.App.2d 652 [169 P.2d 442].[6] (See Note (1951) 39 Cal.L.Rev. 277.) That the Legislature intended to provide for the use of blood-test evidence only *to exclude* possible paternity is expressly manifested in the language that the "question of paternity shall be resolved accordingly . . . [or otherwise] . . . shall be submitted upon all the evidence." (§ 895.) (Cf. § 896 incorporating the substance of § 895 in permitting a direct verdict of acquittal in criminal actions). In doing so,

---

[6]The *Arais* court held that blood-test evidence excluding paternity of the aged putative father was not conclusive, the issue of paternity to be resolved upon the basis of all the conflicting evidence. *Berry*, involving a similar showing of exclusion of paternity of the noted comedy-actor, expressly relied upon the *Arais* "relative weight" standard. (But see critical conc. opn. of McComb, J., at pp. 667-668.)

the Legislature intentionally omitted the very provision which would have authorized the use suggested by appellant; such circumstance is a strong indication of legislative intent to effect only the changes actually undertaken. (See *Kusior* v. *Silver, supra,* 54 Cal.2d 603, 618.) Moreover, our conclusion finds further support in the Legislature's subsequent enactment of the Uniform Parentage Act (Civ. Code, § 7000 et seq.) again rejecting the affirmative use of blood-test evidence as proof of paternity.[7]

■ Secondly, assuming arguendo such specific omission may not be so construed to preclude admissibility under general rules of evidence, nonetheless we discern no logical relevance of the inconclusive results which, having failed to establish nonpaternity, are then offered to prove the opposite—in terms of a statistical probability generally applicable to a large-scale random population (see *People* v. *Collins* (1968) 68 Cal.2d 319, 327-331 [66 Cal.Rptr. 497, 438 P.2d 33, 36 A.L.R.3d 1176]), at least in the absence of an adequate scientific foundation (*id.,* at p. 327; see also *People* v. *Kelly* (1976) 17 Cal.3d 24, 30-32 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Huntingdon* v. *Crowley, supra,* 64 Cal.2d 647, 656) or other corroborative proof as demonstrated in the cases relied upon. The offer of proof as made is woefully inadequate to establish the necessary preliminary foundation for such concededly novel theory of admissibility. (See generally Witkin, Cal. Evidence (2d ed. 1966) §§ 206, 408-409, pp. 188, 366-368.) Nor does the sparse record on appeal offer other evidence even tending to corroborate such generalized inconclusive results.

Finally, in view of the recognized danger of unduly influencing lay jurors by the presentation of so-called "scientific" evidence likely to create a "misleading aura of certainty" (*People* v. *Kelly, supra,* 17 Cal.3d 24, 32), we cannot say on the brief record presented that the determination of the experienced trial judge to exclude such evidence—assuming its admissibility—constituted an abuse of the broad discretion vested under section 352.

## II. *Misconduct of Counsel*

■ Appellant's contention of misconduct relates to certain comments of counsel on two occasions during closing argument. Preliminarily, we

[7]The relevant portion of section 12 of the Uniform Parentage Act (9 U. Laws Ann. (1974-1977 supp.) p. 457) omitted in the California version, provides as follows: "Evidence relating to paternity may include: . . . (3) blood test results, weighted in accordance with evidence, if available, of the statistical probability of the alleged father's paternity."

observe that appellant's failure to request timely admonition to correct the asserted misconduct precludes our consideration on appeal in the absence of demonstrable prejudice. (*Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 892 [112 Cal.Rptr. 540, 519 P.2d 588]; *Philo* v. *Lancia* (1967) 256 Cal.App.2d 475, 484 [63 Cal.Rptr. 900].) In any case, our review of the selected portion of the record discloses no more than what in a fuller context would be normally within the range of permissible argument in litigation of this nature. The contention is without merit.

Judgment affirmed.

Elkington, J., and Newsom, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 1, 1978.