**Michael Ray GENTRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–00043–CR.**

Court of Appeals of Texas, Dallas.

Nov. 23, 1981.

Discretionary Review Granted Feb. 24, 1982.

Ross Teter, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Gregory S. Long, Asst. Dist. Atty., Dallas, for appellee.

Before GUITTARD, C. J., and WHITHAM and GUILLOT, JJ.

GUILLOT, Justice.

This is an appeal from a jury conviction of burglary of a habitation. The court assessed punishment at life imprisonment. We overrule all grounds of error and affirm.

In his first ground of error appellant contends that there was insufficient evidence to identify him as the burglar. The facts are as follows. At approximately 1:30 a. m. on May 15, 1979, sixty-seven year old widow Jessie Fairfax was home when a man knocked on her front door and asked to use her phone. She denied the man entry. Being afraid, she went to the back of the house. As she was loading a shotgun, a man kicked in her back door, grabbed the gun from her, threw the gun behind the bed, and stated that he was going to "f_____ her" and that he "wanted her money." He then proceeded to rape the complainant for approximately thirty minutes. Next he took about sixty dollars from her purse. When he demanded more, she told him there was more in her car. But as he took her out to her car she ran down the street and attracted the attention of some neighbors. Her assailant fled.

Approximately two weeks later, on May 29, 1979, again early in the morning, someone kicked open complainant's front door. She waited in the back with her shotgun and fired a single shot when the man entered the room. It was dark and she did not know if she hit the man. The man threw the complainant down on the bed and stated that he had said he was going to get her. He then beat her severely about the head with his fists and left.

The complainant testified that she did not see her assailant's face either time because it was dark. She did, however, recognize the body and voice as that of the same man each time. Although she had been unable to pick appellant's picture out of a six picture photo lineup while she was in the hospital, at trial she positively identified appellant as the man who had broken into her home.

Dr. Cunningham testified that his examination of the complainant on May 15, 1979, showed sperm and abrasions consistent with rape. Officer Smith testified that he had lifted two fingerprints and a palmprint from the shotgun following the May 15 incident. After comparing the prints with those of appellant taken at trial, he was of the opinion that the palmprints were made by the same man, that one fingerprint was the same as appellant's but that the other fingerprint could not be used because of its poor quality. Officer Easily testified that appellant had been treated for a shotgun wound on May 29, 1981. Finally, a forensic serologist testified that the seminal fluid taken from the bedsheet following the May 15 rape showed it came from a person who was a non-secreter; that a blood sample taken from appellant revealed that he was a non-secretor; and that only 18% of the male population in Dallas were non-secreters.

Appellant's grandmother and her husband testified that he had been home with them the night of the rape and it was to their home that the complainant had come to wait for the police. Both testified that appellant had been in the same room with the complainant while they waited, but that the complainant and appellant had not spoken to each other.

The trial court gave a charge on circumstantial evidence. In circumstantial evidence cases a conviction cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except

that of the guilt of the accused. Proof amounting to only a strong suspicion or mere probability is insufficient. *Stogsdill v. State*, 552 S.W.2d 481 (Tex.Cr.App.1977). Fingerprints alone may be sufficient to prove the identity of the burglar if such fingerprints must necessarily have been made at the time of the burglary. *Nelson v. State*, 505 S.W.2d 271 (Tex.Cr.App.1974). Here the complainant testified that the burglar grabbed the shotgun and threw it behind the bed. Officer Smith testified at trial that he removed both a fingerprint and a palmprint from the handle of the shotgun which he positively matched with appellant's fingerprint and palmprint. Under *Nelson, supra*, this evidence alone was sufficient to identify appellant. The complainant also, however, identified the voice and build of appellant as being the same man who broke into her home on both occasions. The Court of Criminal Appeals has recognized the legitimacy of voice identification as a means of identifying an assailant. *See McInturf v. State*, 544 S.W.2d 417 (Tex.Cr.App.1976). We hold that this, regardless of any probative value the blood test may have, was sufficient evidence to support the conviction.

Appellant's second and third grounds of error are that evidence relating to his blood was obtained and introduced at trial in violation of Art. 18.02, Tex.Code Crim.Pro. Ann. (Vernon 1977). At trial the court issued a search warrant ordering a blood sample to be taken from appellant. A serologist then compared appellant's blood characteristics with the semen found on the sheet from the complainant's bed. The results were compatible and the evidence was introduced before the jury.

■ In *Escamilla v. State*, 556 S.W.2d 796 (Tex.Cr.App.1977), the Court of Criminal Appeals held that the taking of a blood sample was a search and seizure within the meaning of Art. I, Sec. 9 of the Texas

Constitution and, thus, the State was required to comply with Art. 1.06 and Chapter 18, Tex.Code Crim.Pro.Ann. (Vernon 1977). In *Smith v. State*, 557 S.W.2d 299 (Tex.Cr. App.1977) the Court held that under Article 18.02 "blood" was not listed as a "grounds for issuance" of a search warrant and, therefore, could not properly be the object of a search. In an act apparently unrelated to the *Escamilla* and *Smith* decisions,[1] the Sixty-fifth Texas State Legislature amended Article 18.02 in 1977 by adding section 10 to the list of "grounds for issuance." Article 18.02, section 10, provides: "A search warrant may be issued to search for and seize property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." The question before us is whether blood is now included in that list. The Legislature used the broad language "property or items" in section 10. Evidently the term "items"[2] was intended to expand the scope of searches and seizures beyond that comprehended by the term "property." We hold that blood is an "item" within the ordinary meaning of the word. Therefore blood may be a proper object of a valid search warrant in Texas. Appellant's second and third grounds of error are overruled.

■ In his fourth ground of error, appellant contends he was deprived of a fair trial by the willful misconduct of the prosecutor in deliberately eliciting hearsay testimony which identified him as the perpetrator of the offenses alleged. He claims that such misconduct constituted bad faith and violated his constitutional right to a fair trial. Such a claim of bad faith puts the burden of proof on appellant. *Hernandez v. State*, 532 S.W.2d 612 (Tex.Cr.App.1976). Errors such as asking an improper question or admitting improper testimony can generally be cured by a curative instruction by

---

1. Section 10 became effective May 25, 1977. Escamilla was decided May 18, 1977, and the State's Motion for Rehearing was denied on November 2, 1977. Smith was decided November 2, 1977.

2. We have been unable to find any other state or federal statute that requires construction of the term "item" to define the permissible scope of a search.

the court. *White v. State,* 444 S.W.2d 921 (Tex.Cr.App.1969). This is true except in extreme cases where it appears that the question or the evidence is clearly calculated to inflame the minds of the jury. *White, supra.* We find neither the question nor the answer to be inflammatory. Furthermore, no timely objection was made, nor was the court asked to instruct the jury to disregard the answer. Thus, no error is presented to review. *Robinson v. State,* 453 S.W.2d 836 (Tex.Cr.App.1970).

This brings us to appellant's fifth ground of error in which he contends the trial court erred in not instructing the jury to disregard hearsay testimony. He fails to cite any authority compelling the trial court *sua sponte* to instruct the jury to disregard this testimony. In the absence of appellant's requesting the evidence be withdrawn from the jury's consideration, he has presented no reversible error. *James v. State,* 169 Tex.Cr.R. 526, 335 S.W.2d 603 (1960).

In his sixth ground of error appellant contends he was denied effective counsel when his retained counsel failed to move for a curative instruction to the jury after hearsay testimony was admitted. In reviewing this ground of error it is important to remember that the constitutional right to counsel does not mean errorless counsel, and counsel is not to be judged ineffective by hindsight. *Benoit v. State,* 561 S.W.2d 810 (Tex.Cr.App.1977). Rather, the adequacy of counsel must be gauged by the totality of the representation. *Coble v. State,* 501 S.W.2d 344 (Tex.Cr.App.1973). The standard is whether appellant received reasonably effective assistance. *Ex Parte Duffy v. State,* 607 S.W.2d 507 (Tex.Cr.App. 1980). We have reviewed the entire record and find that appellant was not denied effective counsel.

Affirm.

WHITHAM, Justice, concurring.

There being other evidence sufficient to support the conviction, I concur in the majority opinion. However, I disagree that "blood" is an "item" within the meaning of Section 10 of Art. 18.02, Tex.Crim.Code Pro. Ann. (Vernon 1977). If the Legislature in the amendment had meant to include "blood" they could have said so.