**Michael Ray GENTRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 106–82.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 27, 1982.

Ross Teter, J. Thomas Sullivan, Dallas, on appeal only, for appellant.

Henry Wade, Dist. Atty., Gregory S. Long, Robert Whaley and Mike Keasler, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

**OPINION ON DISCRETIONARY REVIEW WITHOUT PETITION**

CLINTON, Judge.

The question presented is whether blood coursing through a human body is an

"item" within the meaning of Article 18.-02(10), V.A.C.C.P., which reads as follows:

"A search warrant may be issued to search for and seize:

\*    \*    \*    \*    \*    \*

(10) property or *items,* except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense..." [1]

The Court of Appeals concluded "that blood is an 'item' within the ordinary meaning of the word," but a concurring opinion disagreed "that 'blood' is an 'item' within the meaning" of the statute. *Gentry v. State,* 629 S.W.2d 77 (Tex.App.—Dallas 1981). Should it be determined that the view expressed in the concurring opinion is correct, then the question becomes whether such blood is "property" within the meaning of the statute, as the State urges in its Brief on Discretionary Review.[2] Because the blood sample at issue was taken from appellant pursuant to a search warrant on or about August 1, 1979, we have occasion to address the last addition of "persons" to Article 18.02, supra, only as that may relate to legislative intent.[3]

We start with the facts related to the only issue before us. As pointed out in the opinion below, a forensic analysis of seminal fluid taken from a bedsheet on which one of the rapes of complainant occurred showed the fluid came from a person who is a

nonsecretor, and testimony was that 18% of the male population in Dallas are nonsecretors. An affidavit for search warrant stated, *inter alia:*

"8. I believe that the blood grouping type ... of the defendant would constitute probative evidence that the defendant committed the foregoing offense. In other words, if such testing of the defendant would show that he were of the non-secretor type, such evidence would constitute probative evidence that the defendant committed the foregoing offense."

The trial judge, sitting as a magistrate, issued a search warrant based on the affidavit, ordering "that a blood sample ... be obtained from the body of the said Defendant ... in accordance with accepted medical practices," and commanding a peace officer

"to search for the *property* and *items* described in the attached Affidavit and to seize the same..."

The return reports that the warrant was executed "by making the search directed therein and seizing during such search the following described *property,* namely, blood ... from the body of the defendant..."

Article I, § 9 of our Bill of Rights guarantees security of the people "in their persons, houses, papers and possessions" against unreasonable seizures and searches, and it mandates that "no warrant ... to seize any person or thing shall issue without

1. That paragraph, it will become significant to note, was added by Acts 1977, 65th Leg., p. 640, ch. 237, § 2, effective May 25, 1977, the day the Governor signed Senate Bill 156. (All emphasis is added by the writer of this opinion unless otherwise indicated.)

2. Not only is the question one of first impression in this State, but the majority of the court below was unable to find "any other state or federal statute that requires construction of the term 'item' to define the permissible scope of a search." *Butler,* supra, at 80, n. 2. Accordingly, seeking all aid proffered we granted the Criminal District Attorney leave to file a brief for the State. Alas, appellate counsel for appellant, who did not try the case and appears to have been appointed, since appellant was

found indigent for purposes of obtaining an appellate record, has not favored us with any advocacy in behalf of appellant on our discretionary review. See, however, *Ayala v. State,* 633 S.W.2d 526 (Tex.Cr.App.1982). As a matter of fact, discretionary review was granted by this Court on its own initiative. Of course, we have appellant's brief submitted initially to this Court before the cause was transferred to the Court of Appeals, but there has been no response to the brief presently relied on by the State.

3. See Acts 1981, 67th Leg., p. 2790, ch. 755, § 5, effective September 1, 1981.

describing them as near as may be, nor without probable cause..." Article 1.06, V.A.C.C.P. provides the same statutory protection. Those constitutional and statutory provisions are implemented by applicable authorizations and limitations contained in Chapter Eighteen of the Code of Criminal Procedure.

The same act that amended Article 18.02 also added subsections (c) and (d) to Article 18.01. For a subdivision (10) warrant there is a requirement in (c) that the affidavit set forth sufficient facts to establish probable cause "(3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched." Subsection (d) limits seizure through execution of a search warrant to "the specifically described property or items set forth in a search warrant issued under Subdivision (10) of Article 18.02 ... or property or items enumerated in Subdivisions (1) through (9) of Article 18.02 ...," and further forbids a second search warrant pursuant to subdivision (10) directed to "the same person, place or thing subjected to a prior search under Subdivision (10) ..."

Two contemporaneous decisions of the Court addressed this matter in 1977, but are chronologically unrelated to the legislative amendment effective May 25, 1977: *Escamilla v. State,* 556 S.W.2d 796 (Tex.Cr.App. 1977)[4] and *Smith v. State,* 557 S.W.2d 299 (Tex.Cr.App.1977). The former held that "the taking of a blood sample is a search and seizure within the meaning of Art. I, Sec. 9 of the Texas Constitution, thus the State was required to comply with the provisions of Art. 1.06 and Chapter 18, V.A.C. C.P." In doing so the Court expressly followed the lead of the Supreme Court opinion in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).[5] *Smith v. State,* supra, held that since "blood" was not listed in Article 18.02, "a search warrant may not be issued to search for this type of evidence," *id.,* at 302. We find that the Legislature was not responding to either decision of the Court when it added "property or items" to Article 18.02.[6]

Before being amended by enactment of Senate Bill 156 Article 18.01(a) defined a

---

**4.** There is a misleading statement on this score in *Bell v. State,* 582 S.W.2d 800 (Tex.Cr.App. 1979). Referring to *Escamilla's* making it impossible to obtain a valid search warrant because blood was not "one of the items" listed, the Court remarks, "*Since that time,* Art. 18.02, supra, has been amended." Senate Bill 156, amending Article 18.02, finally passed May 12, 1977; *Escamilla* was handed down May 18, 1977, and rehearing was denied November 2, 1977.

**5.** "[C]ompulsory administration of a blood test ... plainly involves a broadly conceived reach of a search and seizure under the Fourth Amendment... It could not reasonably be argued ... that the administration of the blood test in this case was free of the constraints of the Fourth Amendment. Such testing procedures plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons' within the meaning of that Amendment." See also *Aliff v. State,* 627 S.W.2d 166 (Tex.Cr. App.1982) in which a Court Panel recognized but did not decide whether *Schmerber* applies to taking a blood sample without a warrant in order to test for alcoholic content.

**6.** Because the parties strongly dispute what the terms truly mean, we have examined the file on Senate Bill 156 officially kept by the Legislative Reference Library and have perused both the original bill introduced by Senator Bill Meier and the committee substitute that was finally enacted, as well as other related materials. The principal contribution made by the committee was inclusion of subsection (d) and its insistence that only material specified "may be seized." Compare *Oubre v. State,* 542 S.W.2d 875 (Tex.Cr.App.1976), a cause originating in Tarrant County, in which seizure of personal letters and photographs not mentioned in the search warrant was approved by the Court on the ground that "it was legitimately within the scope of the affidavit and warrant issued pursuant thereto." The opinion in *Oubre* was delivered November 3, 1976—some two months before the senator from Tarrant County introduced Senate Bill 156. Nothing in *Oubre* nor the file on Senate Bill 156 alludes to taking blood or seizing any other particularized piece of evidence.

A Bill Analysis accompanying the report of the House Committee on Criminal Jurisprudence notes that under then existing state law, "[i]tems constituting evidence of an offense are not permissible subjects of a search warrant," and opines that in adding the language of subsections (c) and (d) and paragraph (10) the bill amends the designated sections "by expanding

search warrant as "a written order . . . commanding [a peace officer] to search for any property or *thing* and to seize the same . . . ," and it still does. Senate Bill 156 introduced the term "*items,*" and as we have indicated nothing in the legislative history sheds any light of reason for using a word having so many different meanings.[7] Yet, in matters of statutory construction courts generally presume that every word in a statute is used for a purpose. *Jessen Associates, Inc. v. Bullock,* 531 S.W.2d 593, 600 (Tex.Sup.1975). And we are satisfied that the purpose has been found.

The effect of amendments to Articles 18.01 and 18.02 is to authorize issuance of a search warrant to search for and seize "mere evidence" that *Gouled v. United States,* 255 U.S. 298, 309, 41 S.Ct. 261, 265, 65 L.Ed. 647 (1921) had held was not obtainable through execution of search warrants. See also *Abel v. United States,* 362 U.S. 217, 234–235, 80 S.Ct. 683, 694–695, 4 L.Ed.2d 668 (1960). *Harris v. United States,* 331 U.S. 145, 154, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399 (1947). But *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) changed all that by rejecting the distinction earlier perceived "between seizure of *items of evidential value only* and seizure of instrumentalities, fruits, or contraband . . ." *id.,* at 300, 87 S.Ct. at 1646. The Supreme Court concluded:

"But if its rejection does enlarge the area of permissible searches, the intrusions are nevertheless made after fulfilling the probable cause and particularity require-

ments of the Fourth Amendment and after the intervention of 'a neutral and detached magistrate . . . ' *Johnson v. United States,* 333 U.S. 10, 14 [68 S.Ct. 367, 92 L.Ed. 436]. The Fourth Amendment allows intrusions upon privacy under these circumstances, and there is no viable reason to distinguish intrusions to secure 'mere evidence' from intrusions to secure fruits, instrumentalities, or contraband." *Id.,* at 309–310, 87 S.Ct. at 1651.

Soon opinions began to speak in similar terms of "items" and "items of evidence." See, e.g., *Chambers v. State,* 508 S.W.2d 348, 351–353 (Tex.Cr.App.1974). Indeed, it was because "blood is not one of the *items* for which a search warrant may issue under Art. 18.02," as then drawn, *Escamilla v. State,* supra, at 799, that the Court soon held in *Smith v. State,* supra, "a search warrant may not be issued to search for this *type of evidence,*" *id.,* at 302. In holding that upon probable cause it is constitutionally permissible to extract a sample of blood from a human body, the Supreme Court had discussed such a seizure and search in relation to obtaining desired evidence. *Schmerber,* supra, at 766–772. In that context "item" has practically acquired a technical meaning, and to become a word of art.

We are thus constrained to hold that, though "blood" is not specifically itemized in Article 18.02, it is nonetheless an item of evidence to search for and to seize which a search warrant may issue in accordance

the current laws relative to the issuance of search warrants."

In sum, such legislative history that is available to us fails to suggest any intent that blood was considered to be either "property or items" within the meaning of the statutes.

7. Though common in use, "item" has varied connotations. See Black's Law Dictionary (Revised Fourth Edition) 966–967; 22A Words and Phrases 655 and 1982 Cumulative Pocket Part 113; 48 C.J.S. 787; and any standard dictionary. In *Brugioni v. Maryland Casualty Co.,* 382 S.W.2d 707 (Mo.1964) the court resorted to

Webster's Third New International Dictionary at 1203, and found that "items" denotes "an individual *thing*" such as an article of household goods—something singled out from a category of things of like kind, *id.,* at 712. The court omitted other examples given by Webster's: an article of apparel, an object in an art collection, a book in a library, as well as other relevant meanings: an individual object, a piece of goods or a product or commodity. There are many more, to be sure, including finally "something unspecified."

with other applicable provisions of Chapter Eighteen.[8]

The judgment of the Court of Appeals is affirmed.

ROBERTS and DALLY, JJ., concur in result.

TEAGUE, Judge, dissenting.

I. *Why This Cause Is Before This Court*

A judge of this Court, acting pursuant to Tex.Cr.R. 210(a)(2), 302(e), and 303(b), filed an order for review of the record on appeal in this cause. Thereafter, this Court, acting En Banc and pursuant to Art. 44.45(a), V.A.C.C.P., and Tex.Cr.R. 303, entered an "Order Granting Review Without a Petition," to decide "the important question of whether evidence relating to appellant's blood was obtained and introduced at trial in violation of the provisions of Art. 18.02, V.A.C.C.P." Presumably, the question stated also implicated a review by this Court of the correctness of the decision of the Court of Appeals. See *Gentry v. State,* 629 S.W.2d 77 (Tex.Ct.App.Dallas 1981). After carefully reviewing the record *of* appeal and researching the law, I now find that this Court acted too hastily in entering its above order, and the cause should be dismissed from the docket of the Court. I make this suggestion and recommendation because I find that the error, if any, in the taking of appellant's blood was not properly perfected in the trial court. Therefore, as the issue was not properly preserved in the trial court for review. purposes, it was not properly before the Court of Appeals. I also find that if there was error in the taking of appellant's blood, because of the facts of the case, such error was harmless error beyond all doubt. If the error was not harmless error, then I find that the affidavit for the search warrant was insufficient to state probable cause to take the appel-

lant's blood. Lastly, I also find that the Texas Constitution prohibits the seizing of an intangible item, such as blood, which is located beneath the body's skin surface.

II. *Why The Issue Was Not Properly Preserved In The Trial Court And Therefore Was Not Properly Before the Court of Appeals For Appellate Review, And In Turn Is Not Properly Before This Court For Appellate Review Purposes*

A. *Introductory Comment*

Based upon the opinion of the Court of Appeals, I naturally assumed, as I am sure other members of the Court did, that for appellate review purposes the issue of forcibly taking such a thing as blood from a live human being's body had been properly preserved in the trial court. I now find that my assumption was erroneous; the decision of the Court of Appeals was predicated upon an imperfect trial record. Consequently, this Court should not have on its own motion granted a review of this cause.

B. *Pre-Trial Proceedings And The Issuance Of The Search Warrant*

On June 18, 1979, the appellant was indicted for committing the offense of burglary of a habitation with the intent to commit the offenses of theft and rape. Appellant pleaded "Not Guilty" to the charge. A prior felony conviction for committing the felony offense of burglary of a vehicle was also alleged in the indictment for enhancement of punishment purposes. The appellant pleaded "true" to that allegation of the indictment. After a trial to a jury on the issue of guilt, which trial commenced on *August 1, 1979,* the jury found appellant guilty and subsequently assessed his punishment at life imprisonment.

On *July 27, 1979,* the trial court conducted a hearing on pretrial motions the appellant's trial attorney had previously filed.

---

**8.** Accordingly, we need not address the alternative question of whether blood is "property" within the meaning of the statute. Nor does the fact that in 1981 the Legislature added "(11) persons" to the list of Article 18.02 bear on the answer to the first question posed at the outset of this opinion.

Because the search warrant that issued in this cause was not issued until *August 1, 1979,* it is understandable why a pre-trial motion to suppress the search warrant, the affidavit for the search warrant, and the return pertaining to the search warrant was not filed by appellant's trial attorney prior to that date.

However, the record on appeal does not reflect that at any time on *August 1, 1979,* any motion to suppress, either oral or written, was ever made, presented, or filed by either the appellant or his trial counsel. On *August 1, 1979,* at 10:00 O'Clock A.M., apparently shortly prior to the commencement of the voir dire examination by the parties of the jury panel, which jury panel presumably had been empaneled for this cause, an investigator with the Dallas County District Attorney's office presented a prepared affidavit for a search warrant and a prepared search warrant to the presiding trial court judge, who thereafter acted, by the record, in both the capacity of a magistrate, see Art. 2.09, V.A.C.C.P., and "Judge presiding".

The search warrant states, inter alia, the following:

On this the 1st day of August, 1979, *the attached 'Affidavit' was presented to this Court.* Such Affidavit is, by this reference, incorporated herein for all purposes. *A hearing was conducted on this date with the Defendant, Michael Ray Gentry, and his counsel being present.* The purpose of such hearing was to determine whether probable cause existed for the issuance of this search warrant. *At such hearing the attached Affidavit was introduced into evidence for this Court's consideration.* (Emphasis Added).

IT IS THE FINDING of this Court that the verified facts, as set out in the attached affidavit, establish probable cause for the issuance of this search warrant. Such verified facts are hereby adopted as the Court's findings.

As to why the investigator wanted to obtain "a blood sample from the body of the defendant," the affidavit for the search warrant reflects, among other things, the following.

6. . . . I have personally talked with Ms. Benita Harwood (an employee at [the Dallas County Forensic Laboratory]) who told me that seminal fluid was detected on such bed sheets. [The affidavit states that bed sheets were removed from the residence of the complainant.] She [Harwood] further told me that she conducted additional tests on such fluid and determined that it was of the non-secretor type.

7. At the present time, I do not have any information regarding the blood group typing or secretor type of the defendant. I have been unable to obtain such information from any other source.

8. I believe that the blood grouping type and secretor type of the defendant would constitute probative evidence that the defendant committed the foregoing offense. In other words, if such testing of the defendant would show that he were of the non-secretor type, *such evidence would constitute probative evidence that the defendant committed the foregoing offense.* [Emphasis Added].

The judge who approved the search warrant signed it as follows:

<u>Kirby Vance (Judge presiding)</u>
Magistrate, Dallas County, Texas,

and ordered that it issue. The investigator shortly thereafter, with the assistance of Harwood, executed the search warrant at some location in the courtroom.

I find that the record on appeal, concerning the presentation of the affidavit for the search warrant and the search warrant to the trial judge by the investigator, is almost as bare as "Mother Hubbard's cupboard."

My reading of the transcription of the court reporter's notes of *the trial proceedings* has yet to reveal therein any express reference to the affidavit, the search warrant, or the return by the appellant or his trial counsel. Unless I am mistaken, and I

do not believe I am, *the following is the sole objection that appellant's trial counsel made during the trial proceedings to any "search for" or "seizure of" blood from the body of the appellant,* which objection occurred during the testimony of Harwood, the forensic serologist. Harwood had testified that she had had occasion to take blood from the appellant's body, "Yesterday morning here in the Courtroom." The prosecuting attorney then asked Harwood whether she had analyzed the blood, and she responded that she had. The record then reflects the following:

> MR. SHAVERS [Defense Counsel]: Your Honor, at this time I will object to any evidence introduced as a result of that test as being in violation—as being a result of an illegal search and seizure and I ask that the Court exclude such evidence.

> THE COURT: Overruled

> MR. SHAVERS: Please note our exception.

As easily seen, trial counsel for appellant, when he made his objection, never expressly mentioned anything about either the affidavit for the search warrant, the search warrant, or the return. Nor did he, also easily seen, specifically articulate his reasons for making his general objection that there was an illegal search and seizure. For example, in his objection he did not specify, as required by this Court's many past decisions, whether the objection was based upon either the Federal or State Constitutions; or both; whether he was challenging the search and seizure on the basis that it was a warrantless search and seizure; whether he was claiming that it occurred as a result of nonconsent, etc. Thus, without complying with the rule regarding specificity in making an objection, another reason exists why there should not be any review of this cause by this Court. E.g., *White v. State,* 543 S.W.2d 366 (Tex.Cr.App. 1976).

The record on appeal clearly and unequivocally reflects that neither the affidavit for the search warrant, the search warrant, nor the return was ever introduced into evidence prior to or during appellant's trial. Nor did the appellant ever object, prior to or during the trial, to the form or substance of either the affidavit for the search warrant, the search warrant, or the return. See *Gonzales v. State,* 494 S.W.2d 912 (Tex. Cr.App.1973).

I, therefore, believe that this Court is establishing bad precedent by implicitly holding that appellant properly and sufficiently preserved the error, if any, in the trial court. I predict that, like the proverbial bad penny, this decision will in the very near future come back in principle to cause this Court to rue the day it implicitly held that the appellant properly preserved in the trial court the issue concerning the validity of the search warrant that issued in this cause.

Although I acknowledge that the above documents are included in the "transcript" portion of the record on appeal, nevertheless, they are not part of the official record of the appeal. Neither the record on appeal nor the official record of the appeal reflects just how the documents got into the record on appeal. They merely accompany the record on appeal. A document may be part of a record on appeal, by its very inclusion therein, but if such document has not been timely and properly offered and introduced into evidence during the course of the trial proceedings, or is in the record by way of a formal or informal bill of exception, or, though not offered and admitted into evidence, has been treated by the parties as though it had been admitted into evidence, see *Humphreys v. State,* 565 S.W.2d 59 (Tex.Cr.App.1978); *Richardson v. State,* 475 S.W.2d 932 (Tex.Cr.App.1972); *Ex parte Reagan,* 549 S.W.2d 204 (Tex.Cr.App.1977), it is not a part of the official record of the appeal and cannot be considered by the appellate courts of this State if the appellant raises a contention concerning same on appeal. Compare *Turner v. State,* 194 S.W.2d 562 (Tex.Cr.App.1946) (Indictment

and judgment, although accompanying the record on appeal, were not properly before this Court); *Jones v. State,* 478 S.W.2d 937, 938, fn. 1 (Tex.Cr.App.1972) (Statements of fact and exhibits, contained in an appellate brief, and thus accompanying the record on appeal, not properly before this Court); *Surety Ins. Co. of Cal. v. State,* 556 S.W.2d 329 (Tex.Cr.App.1977) (Exhibits attached to a brief cannot be considered "as these papers are not part of the official record"); *Ex parte Schoen,* 460 S.W.2d 923 (Tex.Cr.App.1970) (Supporting papers pertaining to an extradition cause, attached to a document in the record of appeal, not properly before this Court for review because they were not introduced during the habeas proceeding); *Morgan et al. v. State,* 157 Tex.Cr.R. 117, 247 S.W.2d 94 (1952) (Failure of State to introduce into evidence a judgment nisi fatal to its judgment); *Kessler v. State,* 514 S.W.2d 260 (Tex.Cr.App.1974) (Clerk read from a State's exhibit, which was not offered or admitted in evidence, *Held,* this proved fatal to State's proof regarding date an enhancement offense was committed). For other cases on this point, see the cases collated under Criminal Law Key 1128(2).

As to an affidavit for a search warrant, a search warrant, and the return, see *Mullane v. State,* 475 S.W.2d 924 (Tex.Cr.App.1972). There, the defendant complained on appeal that the trial court had refused to allow him to introduce into evidence an arrest and search warrant. This Court stated in response to his contention: "The contention . . . is not supported by the record. Our examination of the record does not reveal that any such instruments were offered into evidence. The record does not show that such instruments were even marked for identification by the court reporter. Appellant's counsel merely asked the witness, a clerk from the magistrate's office, if such instruments were in her records. If the appellant felt that the trial court was refusing to permit him to introduce the instruments he did not attempt to perfect the record by offering the instruments for a bill of exceptions. It is incumbent upon the appellant to have these instruments included in the record, if he expects them to be reviewed by this Court." [Citations omitted].

In reference to an arrest warrant, see *Dusek v. State,* 467 S.W.2d 270 (Tex.Cr.App.1971) "If the appellant desired to attack the legality of his arrest and subsequent search . . ., it was incumbent upon him to see that the affidavits were properly in the appellate record. This he has not done; therefore, the legality of his arrest and subsequent search is not presented for review." See also *Haynes v. State,* 468 S.W.2d 375 (Tex.Cr.App.1971).

The above, concerning my discussion of why there was a failure of the appellant or his trial counsel to timely and properly put the above documents into the official record of the appeal, and to have timely and properly objected to them during the trial, if he desired to complain in his appeal about the documents, is buttressed by another rule of law, announced long ago by this Court. In *Mattei v. State,* 455 S.W.2d 761, 769–770 (Tex.Cr.App.1970), see also *Ex parte Mattei,* 458 S.W.2d 916 (Tex.Cr.App.1970), Presiding Judge Onion of this Court stated the following, not long after he became a judge of this Court: "When the State has produced and exhibited a search warrant and supporting affidavit to the trial judge, it will be presumed on appeal that they were regular if proof shows they were examined by the judge . . ."

In *Ortega v. State,* 464 S.W.2d 876 (Tex.Cr.App.1971), Judge Douglas, a former member of this Court, stated: "Once the State shows that a valid search warrant is in existence at the time of the search, the burden of going forward is then on a defendant to prove that the affidavit is insufficient as a matter of law and to see that the search warrant and the affidavit are included in the record on appeal."

In *Walsh v. State,* 468 S.W.2d 453 (Tex.Cr.App.1971), Judge Odom of this Court, in his usual succinct style, stated the following: "The warrant was not introduced into

evidence and there is no evidence in the record which reflects that the warrant was issued without probable cause or that it was invalid on its face. The warrant, not being a part of the record in this case, cannot be considered on review."

### C. *The Ground of Error On Appeal Is Not The Same As Raised In The Trial Court*

There is yet another and further reason why the contention the appellant raised before the Court of Appeals, but has not personally raised in this Court, should not be reviewed by this Court. As reflected by this Court's many past decisions, it is axiomatic in this State that any ground of error raised by an appellant in his brief on appeal must have been first raised in the trial court. See, for example, *Bouchillon v. State*, 540 S.W.2d 319 (Tex.Cr.App.1976); *Reece v. State*, 521 S.W.2d 633 (Tex.Cr.App. 1975). As previously shown, demonstrated, and established beyond all doubt, no contention concerning the affidavit for the search warrant, the search warrant, or the return was ever expressly raised in the trial court. Therefore, any complaint concerning these documents, either directly or indirectly, is not before this Court for review. *Valdez v. State*, 472 S.W.2d 754 (Tex.Cr.App.1971). Thus, in order for the appellant to have overcome, among other things, the presumption of validity, it was incumbent upon him to do more than merely state the following, when the evidence obtained as a result of the search warrant was offered into evidence:

> "Your Honor, at this time I will object to any evidence introduced as a result of that test as being in violation—as being a result of an illegal search and seizure and I ask that the Court exclude such evidence."

### D. *Summary*

It is therefore fundamental law in this State that once a search warrant has issued, supported by an affidavit which recites facts sufficient to find probable cause, prima facie evidence of a lawful search and seizure is established. See *Townsend v. State*, 481 S.W.2d 855 (Tex.Cr.App.1972); *Ortega v. State*, 464 S.W.2d 876 (Tex.Cr. App.1971); *McAlpine v. State*, 455 S.W.2d 247 (Tex.Cr.App.1970). See also 79 C.J.S., Searches and Seizures, Sec. 98, pp. 917–918. It is also fundamental law in this State that "When a defendant objects to the court admitting evidence on the ground that it was unlawfully seized and the State relies on a search warrant, in the absence of a waiver, reversible error will result unless the record reflects that the warrant was exhibited to the trial judge... However, if defense counsel desires a review of the search warrant and affidavit on appeal, it is necessary for him to offer for the record on a bill of exception copies of the search warrant and of the affidavit." *Cannady v. State*, 582 S.W.2d 467 (Tex.Cr.App.1979). If a criminal defendant claims on appeal that his rights which exist pursuant to an exclusionary rule of evidence were violated during the trial proceedings, for example, because there was a seizure of evidence pursuant to a search warrant, which evidence was thereafter admitted into evidence, it is incumbent upon him to have the record on appeal clearly reflect his complaint.

The burden was on the appellant in this cause to present as complete a record on appeal, of the pre-trial and trial proceedings, as possible in order for the appellate courts to adequately consider and dispose of the issues he desired to present on appeal; in this instance, his challenge to the search warrant which issued in this cause. Thus, trial counsel for appellant should have seen that the affidavit, the search warrant, and the return pertaining thereto were properly introduced into evidence either before or during the appellant's trial. But, he did not. Furthermore, he had the legal responsibility to show that his trial objection to those documents was a legally sufficient objection. See *Bradley v. State*, 564 S.W.2d 727, 730 (Tex.Cr.App.1978); *Rogers v. State*, 330 F.2d 535 (5th Cir.1964), cert. de-

nied, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964); Vol. 4, Matthew-Bender's *Texas Criminal Practice Guide,* Sec. 90.09[2][c]. The official record of appeal of this cause does not contain the above documents, or, if it can be argued that it does, the record clearly reflects that appellant has totally failed to show he timely and properly perfected his error, if any, in the trial court.

### III. *Harmless Error*

In any event, if there was properly perfected trial error, it was harmless error beyond a reasonable doubt. Without detailing the horrible, brutal, savage, terrible, nauseating, revolting, abominable, despicable, and heinous acts which were committed by the appellant on the person of the female complainant, if there was ever error in the taking of the appellant's blood, under the facts of this cause, I find such error was at best harmless error beyond all doubt. *Chapman v. California,* 386 U.S. 18, 21–24, 87 S.Ct. 824, 826–827, 17 L.Ed.2d 705 (1967); *Ex parte Smith,* 513 S.W.2d 839, 843 (Tex. Cr.App.1974); *Wilder v. State,* 583 S.W.2d 349, 359 (Tex.Cr.App.1979); *Haney v. State,* 588 S.W.2d 913, 914–915 (Tex.Cr.App.1979); *Clemons v. State,* 605 S.W.2d 567, 571 (Tex. Cr.App.1980); *Ferguson v. State,* 573 S.W.2d 516 (Tex.Cr.App.1978). In *Ferguson,* Id., this Court pointed out that even where blood has been illegally obtained from the body of a defendant, the admission into evidence of the blood may be harmless error beyond a reasonable doubt.

### IV. *The Affidavit For The Search Warrant*

#### A. *The Fourth Amendment and Art. I, Section 9* [1]

I also find that the affidavit for the search warrant, as to the seizing of the body of the appellant and blood from his body, states only mere suspicion that appellant's blood constituted evidence of the offense of burglary of the habitation of the complainant with the intent to commit theft *or* rape, or that the appellant's blood would tend to show that he *committed* the offense of burglary of a habitation with the intent to commit theft or rape, either of which I find is a necessary condition which must be shown before a search warrant may issue under the statute. See Art. 18.-02(10), V.A.C.C.P. See also V.T.C.A., Penal Code, Sec. 30.02. The facts as set out in the affidavit for the search warrant, see supra, manifest nothing more than a mere possibility that the blood of appellant somehow satisfied either of the above conditions. An affidavit for a search warrant predicated upon the mere inarticulate hunch, suspicion or good faith of the officer is insufficient to constitute probable cause. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Even after the execution of the search warrant and the obtaining of the blood from the appellant's body, we are still left with only a mere possibility, through inclusion of appellant's blood within a general classification of blood-type non-secretors, that appellant's blood was connected to the burglary of the habitation of the complainant. It is elementary that comparison of blood types represents nothing more than a statistical probability generally applicable to a large-scale random population. *Dodd v. Henkel,* 84 Cal.App.3d 604, 148 Cal.Rptr. 780 (Calif.Ct. of App., First Dis. 1, 1978). If the majority of this Court is implicitly or expressly holding that a search warrant may now issue, when that search

---

1. The Fourth Amendment to the Federal Constitution provides as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons and things to be seized."

Art. I, Sec. 9 of the Texas Constitution states: "The people shall be secure in their persons,

houses, papers and possessions, from all unreasonable seizures and searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation." As anyone knowledgeable will concede, the above words are not only of ancient vintage, but are indeed powerful expressions by those persons who wrote the respective constitutions.

warrant is based upon an affidavit reflecting nothing more than statistical probabilities, put me down as a strong dissenter to such action.

## V. THE LEGISLATURE

Judge Clinton states in his majority opinion: "We find that the Legislature was not responding to [prior] decision[s] of the Court when it added 'property or items' to Article 18.02." He may be correct. However, and as clearly shown by the transcriptions of the hearings held on the amendment to Art. 18.02, supra, before the Senate Criminal Jurisprudence Subcommittee and the Criminal Matters Subcommittee, as well as the hearings held before the Criminal Jurisprudence Committee of the House of Representatives, leaves me to conclude that the last thing in the minds of the members of the committees was to permit law enforcement officials to obtain a search warrant from a magistrate of this State in order to forcibly remove from the body of a live human being his or her blood. If anything, the transcriptions, which contain only a short passing comment by a former assistant district attorney to the contrary, implicitly reflect that at no time was it the intention of the members of the committees, or, for that matter, with the one noted exception, all of those persons who addressed the committees, to seek passage of a law that would authorize a court order for the drawing of blood from a live human being.

Prior to the Legislative amendment to Art. 18.02, by the addition of Sec. 10, this Court, in a series of cases, see *Escamilla v. State,* 556 S.W.2d 796 (Tex.Cr.App.1977); *Smith v. State,* 557 S.W.2d 299 (Tex.Cr.App. 1977); and *Ferguson v. State,* 573 S.W.2d 516 (Tex.Cr.App.1978), handed down several rulings regarding the forced non-consensual taking of blood from the body of a live human being:

1. The taking of blood from a live human being is a search and seizure within the meaning of Art. I, Sec. 9 of the Texas Constitution.

2. Because blood was not one of the items listed under Art. 18.02, a search warrant could not issue to seize blood from a live human being.

3. It is not unlawful for a live human being to possess blood.

Thus, in Texas, at least until today, there was only one possible way blood could legally be obtained from a live human being who was in the lawful custody of law enforcement officials, and that was by consent. It should be apparent to anyone, by the Legislature's silence, when it amended Art. 18.02 and did not expressly and specifically authorize the seizure of blood from a live human being, that this silence can lead to only one conclusion: the amendment is nothing more than a mere expression of the intent of the Legislature that only concrete, tangible, and visible to the naked eye items or property could be lawfully seized by virtue of a search warrant. The Legislature's lack of explicit expression on the subject of forcible injection of a foreign object into the body of a live human being in order to remove from the inside of the body such a thing as blood indicates to me that the members of the Legislature had no desire or intention to allow search warrants to be used for that purpose.

I believe that the amendment was meant to do nothing more than provide a means to fill a gap previously existing in our law, and to allow law enforcement officials to search for and seize such things as, for example, bank records, administrative type records, movie films, photographs, magazines, keys, credit cards, notes, buttons, clothing, driver's licenses, "trick" books, smoking paraphernalia, envelopes, fingerprints, carpets, maps, and policy slips; provided that none of these items could be construed to be the personal writings by the defendant.

In closing, I unequivocally state that I cannot believe that those persons who wrote the Bills of Rights to the Federal and State Constitutions could have envisioned the day when a majority of this Honorable Court would sanction a forced invasion of the body of a live human being, as well as putting its stamp of approval on authoriz-

ing an intrusion by one human being into the most sacred of all rights of privacy, the privacy of another's body, by the administration of a foreign object into that body in order to obtain such a thing as blood. Today's decision makes it plain what recent news stories have reported: We have forgotten too quickly *The Holocaust* which occurred in Nazi Germany not too many years in the past, and which will forever be a blight on the countries of East and West Germany.

This Court is free, within the limits of the applicable constitutional provisions of the Texas Constitution, to determine the permissible scope of searches and seizures of the kind before us. The integrity of a live human being and an individual person's right of privacy is a cherished value of our society. This Court should hold that the Texas Constitution forbids the issuance of a search warrant to seize mere evidence below the body's surface.

I must, for all of the above stated reasons, respectfully dissent to the majority's opinion.