[Civ. No. 4218. Fifth Dist. Nov. 30, 1978.]

MICHAEL B., Petitioner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
AMANDA B., Real Party in Interest.

## COUNSEL

Steven S. Altman for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**HOPPER, J.**—In this case we consider whether, in a civil paternity suit where an indigent defendant's motion for blood tests has been granted,

the trial court may properly refuse to grant the indigent's motion to have the compensation of the expert conducting the tests paid initially by the county. We answer in the negative.

Susan B., an unmarried woman, became pregnant, subsequently giving birth to Amanda. At the time of conception (approximately Oct. 8-10, 1976), Susan was having sexual relations with petitioner and with W., an adult. On July 14, 1977, the district attorney filed a complaint on behalf of Amanda to establish parent and child relationship and to establish support.[1] Amanda was named plaintiff in that complaint, and both W. and petitioner were named as defendants. Part of the relief sought by the complaint was for judgment that either W. or petitioner is the natural father of Amanda. Petitioner, a 16-year-old minor, was living with his aunt who received public welfare assistance for the care of petitioner. Petitioner's petition to proceed in forma pauperis was granted by the superior court and we subsequently granted a similar petition in this proceeding. Petitioner moved to require the parties to submit to blood tests without cost to petitioner. That motion was for an order requiring petitioner, Susan, W., and Amanda to submit to blood tests by a licensed physician duly appointed by the trial court under the authority of Evidence Code section 892[2] and that the expense be charged to the County of Stanislaus (County) as determined under Evidence Code section 894.[3] The counsel for Amanda was the district attorney for County.[4] The district attorney filed points and authorities stating that plaintiff had no objection to the blood tests being taken, but that County

[1]At the time of the filing of the complaint, Susan and Amanda were receiving welfare assistance. The action was brought under the provisions of section 7000 through section 7018 of the Civil Code (the Uniform Parentage Act), Civil Code section 248 and Welfare and Institutions Code section 11479. Since Susan was receiving public welfare assistance, she was required under the regulations to cooperate in naming the father.

[2]Evidence Code section 892 provides in pertinent part: "In a civil action in which paternity is a relevant fact, the court . . . *shall* upon motion of any party to the action made at a time so as not to delay the proceedings unduly, order the mother, child, and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require." (Italics added.)

[3]Evidence Code section 894 provides: "The compensation of each expert witness appointed by the court shall be fixed at a reasonable amount. It shall be paid as the court shall order. The court may order that it be paid by the parties in such proportions and at such times as it shall prescribe, or that the proportion of any party be paid by the county, and that, after payment by the parties or the county or both, all or part or none of it be taxed as costs in the action."

[4]Civil Code section 7006, subdivision (f), provides that the district attorney may bring an action to determine parental relation. Welfare and Institutions Code section 11475.1 provides that the district attorney shall enforce child support obligations when the child is receiving public assistance.

should not be ordered to pay for the tests. On April 5, 1978, the court granted the motion requiring the parties to submit to blood tests, but ordered petitioner to pay for his own blood test; to share the costs with W. for the blood tests for Amanda and Susan; and ordered the district attorney to bring W. into court to submit to a blood test. On June 15, 1978, petitioner moved to modify the previous order and for an order that the tests be paid for by County. That motion was denied and the court again ordered petitioner to take a blood test and the costs of all tests to be paid one-half by petitioner and one-half by W. That order also provided that the district attorney was to make arrangements for W. to take an HLA test at a certain time at Miller Laboratory. In regard to petitioner, at the specific request of counsel for petitioner who objected to the district attorney making arrangements for petitioner, the court ordered that counsel for petitioner was to make arrangements for his blood test and notify the district attorney of the arrangements. Petitioner then petitioned this court for a writ directing the Superior Court of the County of Stanislaus to issue its order directing that County bear the cost of blood tests without the necessity of petitioner prepaying the requisite costs. We grant the writ.

Mandamus is an appropriate remedy in this case (see extensive citations set forth in *Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 128-130 [142 Cal.Rptr. 325]). The issue in the instant case is a matter of first impression and general importance to the bench and bar. While it has been held that blood test evidence can be used only to exclude possible paternity, and not as affirmative evidence of paternity (*Dodd* v. *Henkel* (1978) 84 Cal.App.3d 604 [148 Cal.Rptr. 780]; but see Comment, *The Use of Blood Tests to Prove Paternity In California* (1969) 3 U.S.F. L.Rev. 297, arguing also for admissibility of the test as affirmative evidence), the result of exclusion of paternity by the blood test is conclusive under the statute (Evid. Code, § 895).[5] Even when the test does not exclude a defendant from being the possible father, it could be a significant factor to be considered by the parties in facilitating resolution of cases, particularly where there is limited evidence on the paternity

---

[5]Evidence Code section 895 provides: "If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence."

The last sentence of the uniform parentage act (§ 4, U. Act on Blood Tests to Determine Paternity, 9 U. Laws Ann. (1957) p. 11) allows the tests to be admissible as proof of the fact of paternity. That sentence was deleted by the California Legislature when Evidence Code section 895 was adopted.

issue and the particular test is helpful in determining statistical probabilities of paternity.[6]

Petitioner contends that the court's refusal to order County to initially pay for the tests in this case violates due process and equal protection, and that the court abused its discretion by refusing to order County to pay for the tests.

■    Under Evidence Code section 892 the court must order a blood test when requested by petitioner. Under Evidence Code section 893[7] "[t]he test shall be made by experts qualified as examiners of blood types who shall be appointed by the court."

Because petitioner objected to the district attorney making arrangements for the tests in this case, the court did not actually appoint an expert. The superior court should appoint such an expert pursuant to the statutes and will be ordered to do so, the choice of which expert being within the discretion of the court.

■, ■    We construe the statutes to require, and we hold, that in the case of an indigent defendant where the child and the mother are receiving public assistance, the compensation of the appointed expert shall be fixed by the court and ordered paid by the county subject to being later taxable to the parties as costs in the action in accordance with Evidence Code section 894. In such a case, we conclude that the court cannot order prepayment by the indigent. We reach this conclusion after careful reading of all of the statutes and the purpose of such statutes. To otherwise hold could lead to serious deprivation of possible defenses being available to a defendant. Having concluded that the statutes do in fact authorize prepayment by the county, it is unnecessary to discuss petitioner's contentions as to due process and equal protection.

---

[6]We are informed that one of the available tests, HLA typing, now utilized by the UCLA Tissue Typing Laboratory, gives a positive read-out of paternity probability in terms of percent and results in an exclusion chance of 95 percent (or more) when used in conjunction with ABO red cell typing (Lee, *Paternity: An Administrative Approach* (May 1977) 11 Clearing House Rev. p. 22). Similar tests are also available (Gliaudys, *Paternity: A Reluctant Fatherhood* (Sept./Oct. 1978) 53 State Bar J. 318, 322, fn. 12).

[7]Evidence Code section 893 provides: "The test shall be made by experts qualified as examiners of blood types who shall be appointed by the court. The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Any party or person at whose suggestion the tests have been ordered may demand that other experts, qualified as examiners of blood types, perform independent tests under order of the court, the results of which may be offered in evidence. The number and qualifications of such experts shall be determined by the court."

Although petitioner also seeks payment of attorney fees herein, our attention has not been called to any statute so authorizing and we decline to so order payment of attorney fees.

Let a writ of mandate issue ordering the Superior Court of the County of Stanislaus (1) to appoint an expert qualified as an examiner of blood types to conduct blood tests of petitioner, the mother and the child herein; (2) to fix the compensation of such expert; and (3) to order that said compensation be initially paid by County subject to being later taxed as costs in the action.

Brown (G. A.), P. J., and Meyers, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.