[Civ. No. 6282. Fifth Dist. June 2, 1983.]

COUNTY OF TULARE, Plaintiff and Appellant, v.
RICHARD A. YBARRA, Defendant and Respondent.

**COUNSEL**

William A. Richmond, District Attorney, Gary H. Evans and John S. Higgins, Deputy District Attorneys, for Plaintiff and Appellant.

Marlin G. Costello, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**WOOLPERT, J.—** In this appeal we hold that the trial court abused its discretion when it dismissed a paternity action brought by the state simply because the alleged father, the defendant, could not afford an attorney and no public funds were available to pay an attorney appointed by the court. Under existing law, the public defender may not be appointed as counsel in such cases. Beyond the procedural issue of judicial power to precipitously end a paternity action are the practical issues to be addressed by the court and local bar association if gratuitous legal services must be provided for this indigent civil litigant.

### THE PROCEEDINGS IN THE TRIAL COURT

On March 4, 1980, appellant County of Tulare (County) filed a complaint against defendant Richard Ybarra in the superior court on behalf of Lauren Butts, a minor. The complaint alleged Ybarra to be Lauren's father and sought to establish his obligation to reimburse County for public assistance payments under Welfare and Institutions Code section 11350 et seq.

Ybarra requested that counsel be appointed to represent him. After the court asked Ybarra about his financial ability, it appointed the public defender to represent him. Later the Tulare County Public Defender's motion to be relieved as Ybarra's counsel was granted, based on *Littlefield* v. *Superior Court* (1979) 98 Cal.App.3d 652 [160 Cal.Rptr. 175]. *Littlefield* held that the superior court had no authority to appoint the county public defender to represent an indigent defendant in a civil action to establish paternity and enforce child support. Although the public defender's office had been aware of *Littlefield,* it had been accepting paternity cases, anticipating the passage of an Assembly bill providing funding for representation of indigent defendants in such cases. The bill was not enacted.

In response to County's request that new counsel be appointed to represent Ybarra, the court asked whether County could suggest any attorneys who would be willing to handle the case. No name was offered. The court then stated, "My information is that there are no attorneys that are willing to subsidize the County in this fashion."

Recognizing that under *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226], indigent defendants are entitled to appointed counsel in paternity cases initiated by the state as a party or on behalf of a mother or child, the court asked Ybarra whether he wanted an attorney. When Ybarra replied that he did, the court dismissed the case without prejudice pending the availability of counsel. The judgment of dismissal indicated the court found Ybarra entitled to appointed counsel and further stated:

"Since the court finds that the Office of the Tulare County Public Defender is unwilling to take paternity defense cases, the Tulare County Legal Service Association refuses to handle such cases, and there are no private attorneys willing to do so, without compensation,

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that this case be dismissed.

"This dismissal is completely without prejudice. The county is authorized to refile this case at any time."

Asking only for the right to continue its litigation, County appeals.

### IS THE JUDGMENT APPEALABLE?

Ybarra notes that because the case was dismissed without prejudice, there was no final disposition of the rights of the parties. ██ He argues the appeal should be dismissed because there was no final judgment from which an appeal may be brought, citing *Bank of America* v. *Superior Court* (1942) 20 Cal.2d 697 [128 P.2d 357], *Trani* v. *R.G. Hohman Enterprises, Inc.* (1975) 52 Cal.App.3d 314 [125 Cal.Rptr. 34], and *Vallera* v. *Vallera* (1944) 64 Cal.App.2d 266 [148 P.2d 694], in which judgments were not deemed final because they did not dispose of all pending issues between the parties. However, as County points out, those cases deal with the severability of a judgment. While there were other causes of action pending between the parties and other issues to be resolved in those cases, there can be no separate judgment in the present case.

██ The definition of a final judgment from which an appeal may be brought is not limited to the final judgment entered in an action; it is the substance and effect of the judgment, rather than the designation of the judgment as "interlocutory" or "final" which determines whether a judgment is appealable. (*Pahl* v. *Ribero* (1961) 193 Cal.App.2d 154, 159-160 [14 Cal.Rptr. 174].)

██ In this case the judgment of dismissal authorized County to refile the case at any time. However, County would not be able to effectively refile and proceed with the case until private attorneys were willing to handle the case gratuitously or the Legislature permitted payment of appointed counsel with county funds. Any further proceedings would therefore be conditioned on events which might never occur. Even if the judgment is not on the merits, by its terms it is a conditional judgment and is appealable. (*Id.*, at p. 160.) Under these circumstances the court's concession that the dismissal be "without prejudice" cannot be used to deny County its right to appellate review. The

judgment is final in the sense that there are no viable issues pending between the parties. Rather than abating the action pending appointment of counsel, the court concluded it. Alternatively, this court may entertain the matter on appeal by treating the appeal as a petition for writ of mandate. (*Barnes* v. *Molino* (1980) 103 Cal.App.3d 46, 51 [162 Cal.Rptr. 786]; 6 Witkin, Cal. Procedure (2d ed. 1981 supp.) Appeal, § 51A, pp. 14-15.)

## Did the Trial Court Err in Dismissing the Case?

■■■ County argues the trial court erred in dismissing the case because it did not make a sufficient inquiry to determine the availability of counsel and the resulting dismissal was highly prejudicial to County. The dismissal delays adjudication of the matter, causing witnesses to have diminished recollection of salient details and increasing the possibility that the father would die, defeating the cause of action for paternity. Moreover, County argues that it is futile to have it pursue these cases on behalf of the mother or child if defense counsel is unavailable, as the cases would never get adjudicated. Thus, the minor child is deprived of a determination of paternity which children of more affluent parents may obtain.

Neither party has cited any statute authorizing a court to dismiss a paternity action for the reasons stated by the court. Circumstances under which an action may be dismissed are described in Code of Civil Procedure sections 581, 581a and 583. None are present here. If there is a nonstatutory basis for permitting the dismissal on the court's own motion, we have not found it.

## Should the Trial Court Have Appointed Counsel to Represent Ybarra?

In *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226], the State Supreme Court held that indigent defendants in paternity proceedings prosecuted by the state are constitutionally entitled to appointed counsel. The state became involved in prosecuting paternity suits after 1974 amendments to the Social Security Act encouraged district attorneys to bring actions on minor children's behalf to determine paternity and obtain support payments. Federal funding was appropriated to subsidize these efforts. Each state seeking federal funds for aid to families with dependent children (AFDC) payments was required to institute an enforcement program to obtain payments from the absent parent, and was reimbursed for some of the expenses involved. (42 U.S.C. § 651 et seq.)

As a condition to receiving AFDC payments, California requires a parent to assign the county its rights to support from another person and to cooperate in establishing the paternity of an illegitimate child for whom aid is claimed.

(Welf. & Inst. Code, §§ 11475.1, 11476.) The district attorney may bring an action on behalf of the mother, child, or county, and must do so when the mother or child is a welfare recipient. Emphasizing the state's role in prosecuting paternity suits, the Supreme Court noted in *Salas* that "[u]nlike the ordinary civil litigant, appellants [putative fathers] were opposed by the full resources of the state, marshalled on the plaintiffs' behalf." (24 Cal.3d at p. 30.)

Rejecting the argument that defendants in paternity suits are not entitled to appointed counsel because they are ordinary civil litigants with purely financial interests in the proceedings, the court noted that actions brought to establish paternity and obtain reimbursement for child support are not ordinary civil actions: "Unlike other civil actions, even those in which the state is a party, in these cases the full power of the state is pitted against an indigent person in an adjudication of the existence of a fundamental biological relationship entailing serious financial, legal and moral obligations. Thus, appellants' entitlement to counsel turns on whether the state has a compelling interest that would justify its insistence on denying appellants a fair opportunity to defend." (24 Cal.3d at p. 32.)

The state's interest in denying counsel is primarily financial. Not only would it be more expensive if public funds are used to finance appointed counsel, but it might become more difficult to prosecute cases if the defendants are represented by counsel. However, although appointed counsel might increase the difficulty of establishing paternity, the state has no interest in assigning paternity to the wrong person. Because appointed counsel should increase the accuracy in establishing paternity, it furthers the state's legitimate interest in obtaining child support. (24 Cal.3d at p. 33.)

Although *Salas* stated that indigent defendants in state-initiated paternity proceedings are entitled to appointed counsel, it said nothing about payment of attorney fees or sources for obtaining appointed counsel. The issue of funding counsel for indigents in civil cases was first addressed in *Payne* v. *Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565]. In *Payne,* the Supreme Court stated that an indigent prisoner who is made a defendant in a civil action is entitled to a "meaningful opportunity to be heard," which might entail appointment of counsel to represent him and preserve his right of access to the courts. (*Id.,* at pp. 924, 927.) However, in a footnote, the Supreme Court stated it was not mandating that counsel appointed in civil cases be paid from public funds: ". . . We do not assert such power. If and how counsel will be compensated is for the Legislature to decide. Until that body determines that appointed counsel may be compensated from public funds in civil cases, attorneys must serve gratuitously in accordance with their statutory duty not to

reject 'the cause of the defenseless or the oppressed.' (Bus. & Prof. Code, § 6068, subd. (h).)" (*Id.*, at p. 920, fn. 6.)

This footnote was emphasized in this court's decision in *County of Fresno* v. *Superior Court* (1978) 82 Cal.App.3d 191 [146 Cal.Rptr. 880]. An indigent prisoner sued in a private civil case was appointed counsel, and the trial court had ordered payment of attorney fees from a county general fund. Noting the footnote in *Payne,* we held that absent legislative authorization, appointed counsel for indigent defendants in civil cases are not entitled to compensation at public expense, but are expected to serve gratuitously. (*Id.*, at pp. 194, 196-197.)

Subsequently, in *County of Los Angeles* v. *Superior Court* (1980) 102 Cal.App.3d 926 [162 Cal.Rptr. 636], the court held that counsel appointed to represent indigent defendants in actions brought by the county to establish paternity and obtain reimbursement of assistance are not entitled to payment from public funds. The court stated that "[u]ntil the Legislature fixes liability on some particular governmental entity to pay such attorneys' fees, appointed counsel in such causes act pro bono publico in the manner appointed counsel formerly acted for indigent defendants in state and federal criminal causes." (102 Cal.App.3d at p. 931.)

■ Therefore, an indigent defendant in an action brought by the state to determine paternity and obtain reimbursement for assistance is entitled to appointed counsel. However, the court cannot appoint the public defender to represent these defendants. (*Littlefield* v. *Superior Court, supra,* 98 Cal. App.3d 652.) Appointed counsel must serve gratuitously, pro bono publico, absent legislative authorization of payment of fees from public funds.

The trial court erred by not appointing counsel to represent Ybarra. The dismissal solved nothing. We have been informed that bar associations in many counties have found ways to obtain counsel for such defendants.[1] There is no

---

[1] In addition, County suggests a method devised by the Missouri Supreme Court to alleviate the hardship on attorneys appointed to represent indigents pro bono publico in *State* ex rel. *Wolff* v. *Ruddy* (Mo. 1981) 617 S.W.2d 64. In that case, public funds were unavailable to compensate attorneys representing indigent criminal defendants. The Missouri Supreme Court determined that attorneys must be appointed to serve pro bono publico, emphasizing the attorneys' oath in which an attorney swears, "That I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any person's cause for lucre or malice." To avoid imposing undue hardship on appointed counsel by requiring them to serve gratuitously, the court issued temporary guidelines requiring the court to make a diligent effort to verify indigency, and to hold an evidentiary hearing on the propriety of appointing a particular attorney as counsel.

Under those guidelines, factors taken into consideration at the hearing would include the attorney's right to earn a livelihood and to be free from involuntary servitude. If the court determined the appointment would impose undue hardship, another attorney would be appointed. An attorney who rendered gratuitous services over a period in excess of 120 days would be excused

clear line between gratuitous services reasonably requested of private attorneys and unfair, burdensome appointments only the most dedicated counsel may willingly provide. Nevertheless, attorneys have a duty to provide these services as the need arises. Ideally, the court will not be required to appoint an unwilling attorney.

County argues pro bono representation in paternity cases is not unduly burdensome; the accuracy of blood tests provided free of charge facilitates the determination of paternity. (*Michael B.* v. *Superior Court* (1978) 86 Cal. App.3d 1006 [150 Cal.Rptr. 586].) Moreover, to assess the father's financial ability is not as difficult as it is in divorce cases. The presumed indigency of the father which supports the appointment of counsel will simplify the financial inquiry.

Unlike those in other occupations, an attorney has a statutory and professional obligation not to reject "the cause of the defenseless or the oppressed." (Bus. & Prof. Code, § 6068, subd. (h); *County of Fresno* v. *Superior Court, supra,* 82 Cal.App.3d at p. 196.) We recognize the age of specialization has reached the legal profession, as in the medical profession. Perhaps only a portion of the bar may be both obligated and able to provide these services. No doubt one might ask why one profession must provide free services which appear to be as important as those provided by other professions with full governmental financial support.

Although we have been requested to suggest guidelines for court appointment of counsel, we decline to do so. We assume a hearing will be held to determine to what extent each alleged father is without resources to compensate counsel. We recommend participation of the local bar association to help the court avoid arbitrary appointments.

The judgment is reversed.

Franson, Acting P. J., and Martin, J., concurred.

---

from additional appointment in other cases. (617 S.W.2d at p. 67.) We mention this system, without indorsement, solely to illustrate how one state has handled the problem of appointing counsel to provide legal services without compensation.