[No. B042039. Second Dist., Div. Three. July 31, 1989.]

FIRST WESTERN DEVELOPMENT CORP. et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ALBERT ANDRISANI, Real Party in Interest.

**COUNSEL**

Stewart S. Mims and Robin A. Mims for Petitioners.

No appearance for Respondent.

Albert Andrisani, in pro. per., for Real Party in Interest.

**OPINION**

**THE COURT.\***—Upon review of a petition for writ of mandate in which First Western Development Corp. (FWDC), a California corporation, is seeking to have Albert Andrisani declared a vexatious litigant, we have

---

\* Before Klein, P. J., Danielson, J., Arabian, J., and Croskey, J.

determined that Andrisani is repeatedly attempting to relitigate issues finally and conclusively determined in an unpublished opinion of this court.

In denying the motion re vexatious litigant as "premature," the respondent court failed to give consideration to the final and conclusive determination of the issues raised in *First Western Development Corp.* v. *Andrisani* (Jan. 9, 1989) B031357 [nonpub. opn.] (*FWDC I* ).[1] Andrisani is a vexatious litigant insofar as this action is based on issues determined in *FWDC I.* Accordingly, we grant the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

In *FWDC I,* we reviewed the contentions raised by Samuel Andrisani and Albert Andrisani in a purported appeal after trial of an unlawful detainer action awarding possession of real property to FWDC. ■ We treated the purported appeal from a nonappealable interlocutory order as a petition for writ of mandate.[2] (*FWDC I, supra.*)

In our decision we disposed of numerous contentions raised by the Andrisanis, including the contention that FWDC contravened the summary nature of the unlawful detainer proceedings by fomenting delay. (*FWDC I, supra.*) We found the Andrisanis' argument that they were prejudiced by the delay unpersuasive as the delay largely resulted from the Andrisanis' conduct during the action. (*FWDC I, supra.*) Further, and in any event, the Andrisanis continued to enjoy possession for the duration, and were required to pay rent at the usual rate as long as they remained in possession, irrespective of the existence of the unlawful detainer action.

In addition, in that opinion we imposed sanctions against the Andrisanis for filing a frivolous appeal taken solely for delay. (Code Civ. Proc., § 907;[3] Cal. Rules of Court, rule 26(a); *FWDC I, supra.*)

After oral argument in *FWDC I* the Andrisanis filed a motion to disqualify this court asserting that the order to show cause re sanctions for the filing of a frivolous appeal was a prejudgment of the issues raised and revealed the court's bias against them. After our denial of the motion to disqualify and

---

[1] "FWDC" refers to First Western Development Corp.; *FWDC I* refers to our opinion in the underlying unlawful detainer case.

[2] The contention that our decision was improperly rendered because we treated the purported appeal as a writ of mandate is frivolous in nature. The procedure is a well-recognized and routine method of accepting review jurisdiction. (See *Olson* v. *Cory* (1983) 35 Cal.3d 390, 400-401 [197 Cal.Rptr. 843, 673 P.2d 720]; *County of Tulare* v. *Ybarra* (1983) 143 Cal.App.3d 580, 584 [192 Cal.Rptr. 49]; *Poe* v. *Diamond* (1987) 191 Cal.App.3d 1394, 1398 [237 Cal.Rptr. 80], and other cases too numerous to list here.) We further emphasize that it was Andrisani who invoked the jurisdiction of this court by filing the purported appeal.

[3] All statutory references are to the Code of Civil Procedure.

the filing of our opinion in *FWDC I,* the Andrisanis sought review in the Supreme Court which denied the petition for review. ■ When, as here, all avenues for direct review have been exhausted, the judgment is final for all purposes. The only issues remaining in the unlawful detainer case were those issues connected with an accounting as to rents due from the Andrisanis to FWDC.

Thereafter, Albert Andrisani initiated several lawsuits: 1. NVC 19092, filed November 23, 1988, in which Andrisani alleged claims against FWDC and various officers and employees of FWDC, alleging causes of action for false arrest, false imprisonment, destruction and confiscation of property, emotional distress and trespass, apparently in connection with the enforcement of the order granting possession of real property to FWDC. In that action the superior court found Andrisani to be a vexatious litigant and ordered the posting of a $45,000 bond. When Andrisani failed to post the bond the action was dismissed. Andrisani filed an appeal of the order of dismissal.

2. LASC 657407, filed May 16, 1988, Andrisani together with his brother Samuel, who was a codefendant in the unlawful detainer action, filed a lawsuit against FWDC, officers and employees of FWDC, TMC Escrow Co., Lincoln Title Co., and others, alleging 13 causes of action arising from the unlawful detainer case. A summary judgment was entered against the Andrisanis on December 13, 1988, as to all claims raised.

3. NVC 20269, filed March 3, 1989, a complaint naming FWDC as a defendant, alleging malice in proceeding with the unlawful detainer action. Andrisani, on June 16, 1989, was found a vexatious litigant and ordered to post a bond.

4. NVC 20449, filed March 22, 1989, in which Andrisani alleges harassment, fright, emotional and physical distress arising from the unlawful detainer action. FWDC, counsel for FWDC, and an employee of FWDC are named defendants. On June 16, 1989, Andrisani was found a vexatious litigant and ordered to post a bond.

5. C719704, filed April 5, 1989, in which Andrisani alleged causes of action for abuse of process, negligence, malicious prosecution, defense expenditures, emotional and physical distress against FWDC, various officers of FWDC, the attorney and law firm which represented FWDC in the unlawful detainer action, the State Bar of California and the Los Angeles County Bar Association The basis of the claims asserted in this action is that FWDC, its officers, and legal representatives delayed the "fast paced proceedings of unlawful detainer for ulterior motives." The claims against the state and county bar associations are based on allegations the associa-

tions failed properly to "supervise the legal organization," thereby allowing the delay of the unlawful detainer action. It is this action which is the subject of the present writ proceeding.

When FWDC was served with yet another complaint arising from the unlawful detainer action, it filed a motion for order requiring Andrisani to post security under the vexatious litigant statutes. (§ 391 et seq.)[4] After that motion was denied without prejudice as premature, FWDC sought a writ petition in this court. We issued a stay and notified the parties on May 26, 1989, that we were considering the issuance of a peremptory writ of mandate in the first instance as required by *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].[5]

---

[4] In pertinent part, the vexatious litigants statutes are as follows: Section 391.

"As used in this title, the following terms have the following meanings:

"(a) 'Litigation' means any civil action or proceeding, commenced, maintained or pending in any court of this state.

"(b) 'Vexatious litigant' means any person:

"(1) Who, in the immediately preceding seven-year period has commenced, prosecuted or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person; or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing; or

"(2) Who, after a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.

"(c) 'Security' means an undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant.

"(d) 'Plaintiff' means the person who commences, institutes or maintains a litigation or causes it to be commenced, instituted or maintained.

"(e) 'Defendant' means a person (including corporation, association, partnership and firm) against whom a litigation is brought or maintained or sought to be brought or maintained."

Section 391.1.

"In any litigation, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security. The motion must be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he will prevail in the litigation against the moving defendant."

Section 391.3.

"If, after hearing the evidence upon the motion, the court determines that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail in the litigation against the moving defendant, the court shall order the plaintiff to furnish, for the benefit of the moving defendant, security in such amount and within such time as the court shall fix."

[5] After receiving the notice, in an apparent attempt to avoid the issuance of a writ, Andrisani, on May 31, 1989, filed yet another lawsuit (Super. Ct. L.A. County, No. NVC 21326). In

In response to our notice that we were considering the issuance of a peremptory writ, Andrisani claims (1) this court was disqualified in November 1988 prior to our decision in *FWDC I*; (2) unlawful detainer proceedings adjudicate only possession, not abuse of process or malicious prosecution; (3) the opinion in *FWDC I* is not a final or conclusive determination as to the delay in the unlawful detainer action, because it was a writ petition, not an appeal; and (4) a conspiracy by women lawyers and judges against Andrisani, a male, deprived him of his due process and equal protection rights.

## Discussion

### I. *Disqualification*

#### A. *The November 1988 Motion to Disqualify Is Final.*

Andrisani's contention relating to "disqualification" of this court arises from a November 1988 attempt to disqualify the panel after we advised the parties we were considering the imposition of sanctions in *FWDC I* because the appeal appeared both frivolous and taken solely for delay. After we heard oral argument both on the "merits" of the Andrisanis' contentions and on the sanctions issue in *FWDC I,* Andrisani filed a motion to disqualify this court. He does not choose to understand that our denial of that motion to disqualify in November 1988 is final and may not now be challenged.[6]

#### B. *The June 1989 Attempt to Disqualify Judges Who Have Entered Rulings Adverse to Andrisani Is Frivolous.*

Andrisani, in connection with the instant petition, again attempted to obtain a disqualification of this court, filing a separate lawsuit naming the members of this panel as defendants, together with other judges and court officers who allegedly are engaged in a conspiracy to discriminate against Andrisani. Since the lawsuit was filed six days after we sent notice to

the latest action, Andrisani alleged violations of due process and equal protection against FWDC, FWDC's attorneys, and various judicial officers, including all four members of this division, the California Women's Lawyers Association and Women Lawyers Association of Los Angeles. The allegations are based upon Andrisani's displeasure with adverse rulings entered by the court in the unlawful detainer action.

[6] In three companion cases (Super. Ct. L.A. County, Nos. 634378, NVC 20269 & NVC 20449) Andrisani is attempting to assert that he disqualified this court in November 1988. The contention arises in connection with an order to show cause as to whether Andrisani is entitled to a waiver of court fees and costs. In attempting to avoid the evidentiary hearing, Andrisani attempted to file in federal court a lawsuit against both this court and the trial court. The United States District Court denied Andrisani's application for fee waiver by checking the space on a standardized form marked "patently frivolous." Andrisani has appealed that ruling to the Ninth Circuit Court of Appeals.

Andrisani and all other parties that we were considering the issuance of a peremptory writ of mandate, the lawsuit is an obvious ploy to cause us to recuse ourselves.

The courts of this state cannot permit a litigant to "shop" for a judge through the device of filing a lawsuit against those judges who enter rulings adverse to the litigant. Such procedure would make it possible for a litigant who obtains an unfavorable decision from a trial court or from an appellate court to cause that court to become disqualified or to recuse itself merely by filing a lawsuit naming the judicial officers as defendants. Such an obvious attempt to manipulate the legal system will not be condoned. Further, the rule relating to disqualification of an appellate judge is that each appellate judge himself decides whether recusal is required. (*Kaufman* v. *Court of Appeal* (1982) 31 Cal.3d 933, 937-940 [184 Cal.Rptr. 302, 647 P.2d 1081].)

Because we can conceive of only one purpose, i.e., "judge-shopping," for Andrisani's attempt to disqualify this court and/or to cause this court to recuse itself, we individually and as a unit denied Andrisani's motion to disqualify this panel from proceeding in this matter. We are confident that review by a higher court will reveal no bias or prejudice against Andrisani but will reveal a decision based solely upon the law and the facts relevant to a determination of the legal issues.

## II. *Vexatious Litigant*

### A. *The Purpose of the Vexatious Litigant Statutes Is to Prevent Abuse of the Judicial Process.*

Subdivision (b) of section 391 is directed at the person who repeatedly relitigates or attempts to relitigate, in propria persona, (1) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined, or (2) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.

The vexatious litigant statutes were enacted to require a person found a vexatious litigant to put up security for the reasonable expenses of a defendant who becomes the target of one of these obsessive and persistent litigants whose conduct can cause serious financial results to the unfortunate object of his attack. The purpose of the statutory scheme is to deal with the problem created by the persistent and obsessive litigant who has constantly pending a number of groundless actions, often against the judges and other

court officers who decide or were concerned in the decision of previous actions adversely to him.

In *Taliaferro* v. *Hoogs* (1965) 237 Cal.App.2d 73 [46 Cal.Rptr. 643], a litigant attempted to allege "contentions that are largely repetitious of those made and disposed of adversely to him in a recent case" by attempting to join as a cross-defendant the attorney who represented the opposing party in the underlying case.

In discussing the provisions of subdivision (b)(2) of section 391, the *Taliaferro* court held: "The constant suer for himself becomes a serious problem to others than the defendant he dogs. By clogging court calendars, he causes real detriment to those who have legitimate controversies to be determined and to the taxpayers who must provide the courts. Arguably, one who has repeatedly relitigated groundless claims against one defendant could be required to give security before pressing to trial an apparently unfounded claim against a new victim." (237 Cal.App.2d at p. 74.) The *Taliaferro* court, however, did not reach the issue as to whether the person found a vexatious litigant in *Taliaferro* came within subdivision (b)(2) of section 391 because that person had filed five unsuccessful suits thereby qualifying as a vexatious litigant under subdivision (b)(1) of section 391.

■ Constitutional challenges to the statutory scheme were disposed of in *Taliaferro* v. *Hoogs* (1965) 236 Cal.App.2d 521 [46 Cal.Rptr. 147], in which the court held (1) the vexatious litigant statutes do not unlawfully discriminate against litigants proceeding in propria persona; (2) the statutes do not operate to deprive a litigant of due process of law; and (3) the requirement that security must be furnished by one found a vexatious litigant if there is no reasonable probability he will prevail is not vague or uncertain. (*Id.* at pp. 525-529.)

In *Muller* v. *Tanner* (1969) 2 Cal.App.3d 445 [82 Cal.Rptr. 738], the court discussed a contention that subdivision (b)(2) of section 391 is superfluous because relitigation is already precluded by the doctrine of res judicata. The *Muller* court commented: " 'The vexatious litigant who attempts to relitigate actions or issues already determined against him should have no ground for complaint. His claim is already barred by other established principles of law, and his rights are in no way modified by the statute.' [Citation.]" (*Id.* at p. 453.)

■ **B.** *Andrisani Is a Vexatious Litigant Pursuant to Section 391, Subdivision (b)(2).*

One lawsuit has been found insufficient to satisfy the requirement that a vexatious litigant is one who, " 'after a litigation has been finally determined

against him, *repeatedly* relitigates or attempts to relitigate, in propria persona . . . the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by such final determination . . . .' " (*Roston v. Edwards* (1982) 127 Cal.App.3d 842, 847 [179 Cal.Rptr. 830].) (Italics added.)

Andrisani, as discussed above, has filed five lawsuits against FWDC, its officers, and attorneys. A review of the respective complaints in three of the lawsuits[7] reveals Andrisani is attempting to relitigate the issues previously raised in the unlawful detainer action with a strong emphasis on allegations of prejudice arising from the lengthy unlawful detainer proceedings. When we rejected the identical argument made by Andrisani in *FWDC I* and held the delay of that action resulted in large part from the conduct of the Andrisanis, the delay issue was conclusively determined. That decision, now final, precludes Andrisani from relitigating the delay issue under the guise of claims of malicious prosecution, abuse of process, and other claims made in the subsequent actions. Andrisani has chosen to ignore or to misconstrue the fact that he has received an adverse final and conclusive judgment on the primary issue on which he bases the claims made in the instant action.

The evidence indicates that Andrisani is a vexatious litigant pursuant to subdivision (b)(2) of section 391 in that he repeatedly attempts to relitigate issues, which have been finally determined, filing a multiplicity of new actions based upon the same facts and issues and filing writ petitions and appeals from practically every order of the trial court.[8] It appears that Andrisani is now burdening the court system with trifling and frivolous litigation merely for his own entertainment.[9]

"The dignity and seriousness of the judicial process, and the necessity of preventing any harassment of litigants, require that reasonable restrictions be placed on the right to submit any one controversy between specific parties to our courts of justice. A party plaintiff or defendant is entitled to

---

[7] Unfortunately, FWDC failed to provide copies of the complaints in two of the lawsuits (Super. Ct. L.A. County, Nos. NVC 20269, NVC 20449) to this court.

[8] A review of this court's docket reveals Andrisani has filed 22 appeals and writ petitions in the past two-year period.

[9] Andrisani's conduct during these lawsuits is reprehensible. For example, Andrisani has filed more than 40 motions and petitions in the unlawful detainer action since the entry of the adverse judgment in that action. In attempting to determine the amount of rent owed by the Andrisanis to FWDC, the court in the unlawful detainer case, on February 28, 1989, entered a minute order in which that court found: "Every piece of paper filed by defendants [Andrisanis] since the case has been before this court has been false in whole or substantial part and has been filed soley [*sic*] to delay resolution of this case. Defendants' claims have been absolutely, totally and indisputably without merit. Moreover, their declarations under penalty of perjury are patently false . . . ."

his day in court; if he raises a question as to the respective rights of another person and himself he deserves, and will get, his answer; but once having secured a final determination of his right, he cannot again ask the court to redecide the same question on its merits." (*Lunsford* v. *Kosanke* (1956) 140 Cal.App.2d 623, 627 [295 P.2d 432].)

The unreasonable burden placed upon the courts by groundless litigation prevents the speedy consideration of proper litigation and the tremendous time and effort consumed by unjustifiable suits makes it imperative that the courts enforce the vexatious litigant statutes enacted by the Legislature. "[T]he trial courts should be alert to an abuse of our judicial system and should take firm action . . . ." (*Stafford* v. *Russell* (1962) 201 Cal.App.2d 719, 722 [20 Cal.Rptr. 112].) A litigant who loses then burdens the courts with new actions and repeated appeals based on the same controversy and with no reasonable possibility of prevailing wastes valuable court time. It is axiomatic in our system of justice that every person is entitled to his day in court; however, a litigant is not entitled to two days in court.[10] Andrisani's apparently "incurable litigation complex" has rendered him an "insufferable nuisance," imposing an unreasonable burden upon the courts and our system of administration of justice. (*Stafford* v. *Russell, supra,* 201 Cal.App.2d at pp. 719-720.) The motive here may be to harass the other party, to postpone the result, or simply to satisfy some urge to engage in litigation. The court cannot permit such litigation to continue without offering the protection provided in the vexatious litigant statutes to the targets of the repeated attempts to relitigate the same issues.

III.  *Other Contentions*

The allegation concerning a conspiracy to discriminate against Andrisani among women judges and women lawyers, which conspiracy mysteriously includes several male judges together with entire law firms and law associations with numerous male members, is too ridiculous and fanciful to merit discussion.

Finally, the issues raised and disposed of in *FWDC I* are final and conclusive, including the delay issue Andrisani is attempting to relitigate in this action. Our final conclusive determination that Andrisani was not prejudiced by any delay in the lengthy unlawful detainer action acts as an absolute bar to his attempts to raise the delay issue thinly disguised by stating the same claim under a different title.

---

[10]Collateral estoppel and/or res judicata may offer protection to those defendants who are not protected under section 391 et seq.

## DISPOSITION

We have determined that the respondent court must vacate its order denying as premature FWDC's motion to post security under section 391 et seq.

Let a peremptory writ of mandate issue directing the respondent court (1) to vacate its order denying the motion to require the posting of security by Andrisani; (2) to enter an order granting the motion pursuant to section 391, subdivision (b)(2), in that Andrisani is repeatedly attempting to allege claims based upon the delay issue which issue has been finally and conclusively determined in *FWDC I*; and (3) to require Andrisani to post an appropriate bond.

The stay order entered by this court on May 26, 1989, is vacated.

The petition of real party in interest for review by the Supreme Court was denied October 12, 1989.